DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Frank L. Sprenz appeals from convictions and sentences rendered by the Summit County Court of Common Pleas. We affirm.
Kay Westfall and Jacqueline ("Jackie") Knight once worked at Stanley's Spa as masseuses and prostitutes. The Spa was owned by Shirley Stanley. Sprenz, who cohabited with Stanley, performed maintenance work and odd jobs around the Spa. Knight and Westfall became acquainted with Sprenz at the Spa. Westfall was fired from the Spa on June 26, 1995 after Stanley and Sprenz discovered a book Westfall kept, which listed sexual acts, prices, and customer names, and was intended to keep the Spa's prostitutes from undercutting each other's prices.
After being fired, Westfall was evicted from the apartment she rented from Stanley. Knight quit the Spa, at least in part because of her displeasure over Westfall's firing. Westfall, Knight, and Knight's daughter, Jessica Bittner, moved in together at 215 Westwood Avenue, Akron. Westfall expressed fear of Sprenz and took pains to conceal the location of her new residence from Sprenz.
Soon after Westfall's eviction, Sprenz asked Molly Homer, another masseuse at the Spa, if she knew anyone who would "scare" Westfall. Homer directed Sprenz's request to her boyfriend, Ramon Wright. Homer saw Sprenz and Wright settle upon a payment of $500 for Wright's services, and testified that Wright and Sprenz had conversations nearly every day from this point up until the night of September 25, 1995. About two weeks before that date, Sprenz informed Wright of Westfall's Westwood address.
On September 25, 1995, Wright, Marshall Foster (a.k.a. "Squeaky"), and Cherise Porter began the night at Homer's place, where they acquired a stun gun. Those three individuals, with hoods on, appeared on Westfall's porch, asking if Kay was there. Westfall and Knight answered that there was no Kay there. Wright, Porter, and Foster proceeded to break the front door window in order to reach in and turn the knob. Knight ran to the telephone, which was dead because its lines had been cut. As the three attackers entered the house, Westfall followed Knight up the stairs, where Jessica Bittner had been sleeping. Knight saw a flash of electricity, as from a stun gun, and Foster and Wright laid their hands upon Westfall. Knight continued to hear Westfall's screams as she tended to her daughter in another room. Moments later Knight encountered Westfall, who was bleeding from her side and from her mouth.
Wright set the house on fire. Westfall and Bittner perished in the blaze. Knight escaped but was seriously injured by her jump from a second-story window. Homer testified that Wright, Porter, and Foster convened at Homer's home afterward, and that Wright telephoned Sprenz at that point. The following day, Homer witnessed Sprenz giving Wright $300, and congratulating Wright on a "good job."
Sprenz was indicted for two counts of complicity to commit aggravated murder, with a specification for imposing death or imprisonment for a capital offense; complicity to commit attempted aggravated murder, with a specification for a prior aggravated felony; complicity to commit aggravated burglary, with a prior aggravated felony specification; and complicity to commit aggravated arson, with a prior aggravated felony specification. The jury found Sprenz not guilty of both counts of complicity to commit aggravated murder, not guilty of complicity to commit attempted aggravated murder, and not guilty of complicity to commit aggravated arson. The jury found Sprenz guilty of complicity to commit aggravated burglary, and guilty of two counts of complicity to commit involuntary manslaughter. On the verdict form, the jury indicated that it found that both deaths were caused by aggravated burglary, felonious assault, and menacing, and found that neither death was caused by aggravated arson.
Sprenz assigns seven errors, the sequence of which we rearrange for ease of discussion.
 I.
Sprenz's seventh assignment of error states:
 THE VERDICT OF GUILT OF AGGRAVATED BURGLARY WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE, DENYING DEFENDANT DUE PROCESS AND A FAIR TRIAL.
Sprenz argues that the jury's verdict of guilty of complicity to commit aggravated burglary was contrary to the manifest weight of the evidence. To reverse a judgment of a trial court based upon the manifest weight of the evidence, the court of appeals "sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." State v. Thompkins
(1997), 78 Ohio St.3d 380, 387. In conducting a "manifest weight" inquiry,
 "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. The jury's finding of guilt on this count was not contrary to the manifest weight of the evidence.
Nowhere in this or any other assignment of error does Sprenz challenge the validity of the complicity aspect of his convictions. R.C. 2923.03 provides in relevant part:
 (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 (1) Solicit or procure another to commit the offense[.]
Sprenz was indicted for soliciting Ramon Wright to commit the offense of aggravated burglary, in violation of 2911.11(A)(3), which provides:
 (A) No person, by force, stealth, or deception, shall trespass in an occupied structure, as defined in section 2909.01 of the Revised Code, or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense * * * or any felony, when any of the following apply:
* * *
 (3) The occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present.
In finding Sprenz guilty of this charge, the jury further found that the purpose of the trespasser (Wright) was neither theft nor aggravated arson, but was felonious assault.
Sprenz contends that there is no evidence that he did anything more than ask someone to "scare" Westfall, i.e., that there is no evidence that he asked anyone to break into Westfall's house. We disagree. That Sprenz offered Wright $500 for the "scare" raises the reasonable inference that Sprenz sought more than a Halloween prank. Jacqueline Knight testified that, having vacated an apartment owned by Shirley, Westfall left no forwarding address because she was afraid of Sprenz. According to Molly Homer, Sprenz informed Wright of Westfall's new address about two weeks before Wright struck. Sprenz held almost daily conversations with Wright prior to the attack. After learning of the fire and deaths, Sprenz paid Wright and told him that he had done a "good job." The jury could reasonably infer that Sprenz intended for Wright to "scare" Westfall at her home, and that the "scare" sought included trespassing into Westfall's dwelling with the purpose to feloniously assault Westfall.
The evidence was clearly sufficient to support Sprenz's conviction on this charge. Having reviewed the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we find that in resolving conflicts in the evidence, the jury did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Sprenz's seventh assignment of error is overruled.
 II.
Sprenz's sixth assignment of error states:
 THE JURY VERDICT FINDING DEFENDANT GUILTY OF COMPLICITY TO COMMIT INVOLUNTARY MANSLAUGHTER WAS CONTRARY TO LAW, BECAUSE THE DEATHS WERE PROXIMATELY CAUSED BY AN AGGRAVATED ARSON, AN OFFENSE THE JURY ALSO FOUND DEFENDANT DID NOT COMMIT DENYING DEFENDANT DUE PROCESS AND A FAIR TRIAL.
In defining involuntary manslaughter, R.C. 2903.04(A) states that "no person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony." In finding Sprenz guilty of two counts of complicity to commit involuntary manslaughter, the jury further found that each death was proximately caused by aggravated burglary, felonious assault, and misdemeanor menacing. The jury also found that the deaths were not proximately caused by aggravated arson.
Sprenz points out that the state presented undisputed expert testimony that the cause of the deaths was asphyxia due to carbon monoxide intoxication due to the house fire. Since the deaths were caused by fire, and since the jury found Sprenz not guilty of complicity to commit aggravated arson, Sprenz argues, his convictions for complicity to commit involuntary manslaughter are contrary to law. We disagree.
As the statute quoted above states, involuntary manslaughter is committed where death is proximately caused by commission of a felony. The jury found that death was proximately caused by aggravated burglary and felonious assault.
 "[W]hen a person, acting individually or in concert with another, sets in motion a sequence of events, the foreseeable consequences of which were known or should have been known to him at the time, he is criminally liable for the direct, proximate, and reasonably inevitable consequences of death resulting from his original criminal act."
State v. Robinson (1994), 98 Ohio App.3d 560, 574, quoting Statev. Chambers (1977), 53 Ohio App.2d 266, 272-273; see, also, Statev. Swiger (Apr. 3, 1991), Summit App. No. 14651, unreported, at 9.
Evidence was presented that Wright and Foster broke into Westfall's house and beat Westfall. Wright then set the house on fire. Cherise Porter testified that Wright said that he set the house on fire in order to cover up his fingerprints. There is sufficient evidence indicating that in committing aggravated burglary with the purpose of feloniously assaulting Westfall, Wright and Foster set in motion a sequence of events, of which death was a reasonably inevitable consequence. The aggravated burglary generated by Sprenz's solicitation of Wright to "scare" Westfall proximately caused two deaths. Sprenz's sixth assignment of error is overruled.
 III.
Sprenz's fifth assignment of error states:
 THE JURY VERDICT FINDING DEFENDANT GUILTY OF COMPLICITY TO COMMIT INVOLUNTARY MANSLAUGHTER WAS CONTRARY TO LAW, BECAUSE THE JURY FOUND THE DEATHS WERE PROXIMATELY CAUSED BY AGGRAVATED BURGLARY, FELONIOUS ASSAULT, AND MENACING CONTRARY TO THE ONLY EVIDENCE PRESENTED, DENYING DEFENDANT DUE PROCESS AND A FAIR TRIAL.
The sum total of Sprenz's argument on this point is as follows: "The jury's finding that Westfall and Bittner died as a result of conduct other than the fire is manifestly against the weight of the evidence." Sprenz misstates what the jury found. The jury found that Westfall and Bittner died as a proximate result of the sequence of events set in motion by the aggravated burglary, felonious assault, and menacing. We have determined that there was sufficient evidence supporting the jury's verdict with respect to proximate causation of the deaths. Having reviewed the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we find that in resolving conflicts in the evidence, the jury did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Sprenz's fifth assignment of error is overruled.
 IV.
Sprenz's second assignment of error states:
 THE COURT COMMITTED ERROR PREJUDICIAL TO DEFENDANT AND DENYING HIM DUE PROCESS AND A FAIR TRIAL, BY INCLUDING IN THE CHARGE TO THE JURY, OVER OBJECTIONS OF DEFENDANT, AN INSTRUCTION ON THE LESSER AND INCLUDED OFFENSE OF COMPLICITY TO COMMIT INVOLUNTARY MANSLAUGHTER.
Sprenz was charged with complicity to commit aggravated murder in violation of R.C. 2903.01(B) and 2923.03. Over Sprenz's objection, the trial court instructed the jury on the lesser included offense of complicity to commit involuntary manslaughter, based upon the offenses of felonious assault, aggravated arson, and aggravated burglary.[1] The Ohio Supreme Court has held:
 If under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser included offense must be given.
State v. Wilkins (1980), 64 Ohio St.2d 382, 388. See, also, Statev. Williams (1996), 74 Ohio St.3d 569, 574, certiorari denied (1996), ___ U.S. ___, 136 L.Ed.2d 62.
Aggravated murder requires an intentional killing, while involuntary manslaughter does not. In defining aggravated murder, R.C. 2903.01(B) states:
 No person shall purposely cause the death of another while committing or attempting to commit, or while fleeing after committing or attempting to commit kidnaping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape.
In defining involuntary manslaughter, R.C. 2903.04(A) states that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony."[2] A person acts "purposely" when
 it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
R.C. 2901.22(A).
Sprenz does not dispute the sufficiency of the evidence of his guilt of complicity, as defined by R.C. 2923.03. Sprenz argues that there was no evidence presented to support a non-purposeful killing, and therefore under no reasonable view of the evidence was it possible for the jury to find Sprenz guilty of the lesser included offense of complicity to commit involuntary manslaughter. Hence, according to Sprenz, the instruction given on complicity to commit involuntary manslaughter was error. We disagree because the record contains sufficient evidence of a non-purposeful killing.
Molly Homer testified that Sprenz sought to "scare" Westfall at her home by means of accomplices. Knight testified that Wright and Foster broke into the house and then beat and stunned Westfall, driving her upstairs. Wright started the fire, later telling Cherise Porter that he did so in order to cover up fingerprints. Reasonably viewing the evidence, a fact finder could have concluded that Sprenz did not intend to have Westfall murdered, and that in setting fire to the house Wright did not intend to kill anyone. Sprenz's second assignment of error is overruled.
 V.
Sprenz's first assignment of error states:
 THE TRIAL COURT'S JURY INSTRUCTION REGARDING PROXIMATE CAUSATION, AS IT RELATED TO INVOLUNTARY MANSLAUGHTER, WAS INCORRECT AND PREJUDICIAL [sic] DENYIED [sic] DEFENDANT DUE PROCESS AND A FAIR TRIAL, BECAUSE IT FAILED TO INCLUDE THE ELEMENT OF FORESEEABILITY.
Sprenz argues that the trial court's instructions on involuntary manslaughter harmed him because they failed to set forth a particular aspect of causation. In explaining causation to the jury, the trial court stated:
 Again, the death must have been caused as a proximate result of a felony or misdemeanor. Cause is an act or failure to act which in a natural and continuous sequence directly produces the death and without which it would not have occurred.
 The death is the proximate result of the defendant's act or failure to act when it is produced in a natural and continuous subsequence [sic] and would not have occurred without the act or failure to act.
Having examined the proposed instructions, Sprenz's attorney requested that the trial court "instruct on the death as being foreseeably, reasonably foreseeable result of the defendant's actions for purposes of this particular issue. The causation definition should include reasonable foreseeability as a description of the needed mental state and the needed level of causal relationship to the result." After the delivery of the instructions to the jury, Sprenz reiterated his objection to the noninclusion of the foreseeability language he requested.
Sprenz states that "the trial court's refusal to so charge removed from the jury's reasonable consideration that the fiery deaths of Kay Westfall and Jessica Bittner were not the foreseeable result of Frank Sprenz asking Molly Homer if she knew anyone who would `scare' Kay." Sprenz does not state what harm followed from this alleged error. Presumably, Sprenz maintains that, having considered the missing aspect of causation, the jury would not have convicted him of complicity to commit involuntary manslaughter.
Sprenz's argument misses the mark. Sprenz did not object to the following language in the trial court's instruction on involuntary manslaughter:
 So if you find beyond a reasonable doubt that defendant solicited or procured Ramon Wright to commit the offense of aggravated burglary * * * and that the death of Westfall and/or Bittner was proximately caused by such unlawful act, then you will find the defendant guilty of involuntary manslaughter even though the defendant had no purpose or intention of causing the death of Westfall and/or Bittner.
The jury was instructed that Sprenz was guilty of complicity to commit involuntary manslaughter if the aggravated burglary he solicited caused death. Causation, therefore, is analyzed from the aggravated burglary to death, and not from the solicitation to death. See State v. Brown (Nov. 29, 1994), Franklin App. No. 94APA03-298, unreported; State v. Gravely (Jan. 26, 1993), Franklin App. No. 92AP-1027. Contrary to Sprenz's argument, therefore, it makes no difference whether or not Sprenz, in soliciting Wright to "scare" Westfall, could reasonably foresee anyone's death resulting.
Having found Sprenz guilty of complicity to an aggravated burglary, the question before the jury became whether the aggravated burglary Sprenz solicited proximately caused death. In our discussions of Sprenz's fifth and sixth assignments of error, we rejected his challenges to the jury's conclusion. The victims were killed by a fire set by Wright and Foster while they committed aggravated burglary in a house they knew to be inhabited at the time. The jury found the commission of the aggravated burglary to be "an act which in a natural and continuous sequence directly produces the death and without which it would not have occurred." Sprenz does not show and we cannot see how a jury would have been able to so find and yet also find that death was not a reasonably foreseeable result of the actions of Wright and Foster. Sprenz's first assignment of error is overruled.
 VI.
Sprenz's third assignment of error states:
 DEFENDANT-APPELLANT WAS PREJUDICED BY THE COURT'S ADMISSION OF A DECEASED WITNESS' SPECULATIVE OPINION STATEMENT, WHICH WAS NOT BASED UPON PERSONAL KNOWLEDGE, IN VIOLATION OF EVID. R. 602 AND EVID. R. 701, WHICH DENIED DEFENDANT DUE PROCESS AND A FAIR TRIAL.
This assignment of error is based on the following exchange, which took place during the prosecutor's direct questioning of Jackie Knight:
 Q. I want to ask you, when they get to the door and ask for Kay and then begin to break the window and reach in, does Kay Westfall say anything to you about what is happening?
MR. BURDON: Objection.
A. Yes.
THE COURT: Note the objection, overruled.
Q. And the answer to that question was yes?
A. Yes.
Q. What did Kay Westfall say to you?
 A. She said this was Frank's shit. That's a direct quote.
Q. This is Frank's shit?
A. This is Frank's shit.
Sprenz objected to the question of whether Westfall said anything to the witness. Sprenz did not object to the question eliciting possible hearsay testimony concerning what Westfall said. Sprenz's failure to object waived all but plain error from the admission of the testimony. State v. Davies (1997), 80 Ohio St.3d 311,330. To show plain error, Wilson must demonstrate "that the trial's outcome would clearly have been different but for the alleged errors." State v. Campbell (1994), 69 Ohio St.3d 38,49, certiorari denied, 513 U.S. 913, 130 L.Ed.2d 204. The Ohio Supreme Court has repeatedly admonished that this exception to the general rule is to be invoked reluctantly: "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Sprenz makes no such showing in this case.
Sprenz argues that Westfall's statement was inadmissible even if excepted from the rule that requires exclusion of hearsay testimony.[3] Sprenz contends that the statement lacks an independent basis for admissibility because 1) it was offered to show Sprenz's connection to the people breaking into Westfall's home; 2) Westfall lacked personal knowledge of any connection between Sprenz and the people breaking into her home; and 3) Westfall's statement was opinion testimony not rationally based on her perception.
Evidence of a dead victim's fear of a defendant can be relevant and admissible as an exception to the hearsay rule.E.g., State v. Reynolds (1998), 80 Ohio St.3d 670, 677.[4]
Evid.R. 803(3) provides for the following hearsay exception:
 A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.
Hearsay evidence reflecting a victim's fearful state of mind is excepted from exclusion as hearsay where the evidence points forward in time and does not reflect the reasons underlying the state of mind. State v. Awkal (1996), 76 Ohio St.3d 324, 331.
Even if we were to find that the trial court erred in receiving this testimony, we would find the error harmless in light of ample other evidence that Sprenz contracted with Wright to "scare" Westfall. Sprenz's third assignment of error is overruled.
 VII.
Sprenz's fourth assignment of error states:
 THE TRIAL COURT'S REPEATED RULINGS WHICH ALLOWED THE STATE TO PRESENT EVIDENCE OF DEFENDANT'S MOTIVE THROUGH HEARSAY, PREJUDICED DEFENDANT AND DENIED HIM DUE PROCESS AND A FAIR TRIAL.
Sprenz takes issue with Knight's testimony as to other statements Westfall made as to her fear of Sprenz, and Sprenz's extortion of money from Westfall.
Knight testified that after she and her daughter moved in with Westfall at 915 Westwood, Westfall expressed "concerns" that Sprenz would come out and "hurt [Westfall] * * * anyway he could." Knight also testified that Westfall expressed fears of Sprenz prior to the move to 915 Westwood. Sprenz objected to the admission of these statements. For the reasons discussed above at footnote 4, we conclude that the trial court did not err in admitting this testimony and, if it did err, any error was harmless.
Knight also testified that, prior to the move to 915 Westwood, Westfall expressed fear of Sprenz on the grounds that Sprenz "would hire this one black guy and bust her arm or wrist." Because this evidence reflects the reasons underlying Westfall's fear of Sprenz, it does not qualify for the exception from exclusion provided by Evid.R. 803(3). Id.; see, also, State v.Apanovitch (1987), 33 Ohio St.3d 19, 21. Nevertheless, the admission of this evidence was harmless in light of ample other evidence that Sprenz contracted with Wright to "scare" Westfall at her home.
Finally, Knight testified that Westfall told her that Sprenz extorted one-half of the tip money she earned for prostitution at the Spa. Sprenz argues that this testimony was inadmissible hearsay that caused him prejudice. We disagree. Evid.R. 804(B) lists exceptions to exclusion under the hearsay rule where the declarant is unavailable as a witness. Evid.R. 804(B)(3) sets forth the exception for statements against interest:
 A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
"A decision whether to admit the hearsay statement of an unavailable declarant pursuant to Evid.R. 804(B)(3) is one within the discretion of the trial court." State v. Sumlin (1994),69 Ohio St.3d 105, syllabus. The trial court did not abuse its discretion in admitting Knight's testimony of Westfall's statements. There is no dispute that Westfall was unavailable as a witness. Westfall's statement averred her participation in prostitution. A review of the surrounding circumstances and factual context clearly indicate the trustworthiness of Westfall's statement. Westfall worked at the Spa for six years. Several ex-employees of the Spa testified that prostitution commonly occurred there, and that the masseuses were tipped by customers for such services. Molly Homer, who also worked at the Spa, also testified that Westfall had told her of Frank's extortion. We cannot find that the trial court abused its discretion by concluding that the statement so far tended to subject Westfall to criminal liability that a reasonable person in Westfall's position would not have made the statement unless she believed it to be true. Westfall's fourth assignment of error is overruled.
Westfall's seven assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
 Exceptions. _______________________________ WILLIAM R. BAIRD
FOR THE COURT
DICKINSON, P. J.
REECE, J.
CONCUR
[1] An offense may be a lesser included offense of another if:
 i) the offense carries a lesser penalty than the other;
 ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and
 iii) some element of the greater offense is not required to prove the commission of the lesser offense.
State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus. Involuntary manslaughter is a lesser included offense of aggravated murder in violation of R.C. 2903.01(B). State v.Thomas (1988), 40 Ohio St.3d 213, 216.
[2] The trial court delivered the following instruction to the jury:
 Involuntary manslaughter is causing the death of another as a proximate result of committing or attempting to commit a felony or a misdemeanor.
[3] "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "Hearsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." Evid.R. 802.
[4] The Ohio Supreme Court has held two other times in murder cases that evidence of dead victim's statements of fear of the defendant were relevant and admissible as exceptions to the hearsay rule. State v. Simko (1994), 71 Ohio St.3d 483,490-491, certiorari denied (1995), ___ U.S. ___,133 L.Ed.2d 57; State v. Apanovitch (1987), 33 Ohio St.3d 19, 21-22. In neither case did the Court discuss why the evidence was relevant. Likewise ruled the First District Court of Appeals in State v. O'Neal (Dec. 12, 1997), Hamilton App. No. C-960392, unreported, and State v. Sutorius (June 25, 1997), Hamilton App. No. C-960547, unreported. The Eighth District concluded that such statements were relevant to prove theidentity of the perpetrator. State v. Frazier (Feb. 17, 1994), Cuyahoga App. No. 62557, unreported; State v. Collins
(March 24, 1988), Cuyahoga App. No. 53514, unreported.