[This opinion has been published in *Ohio Official Reports* at 69 Ohio St.3d 105.]

THE STATE OF OHIO, APPELLANT, *v.* SUMLIN, APPELLEE.

[Cite as *State v. Sumlin*, 1994-Ohio-508.]

*Evidence—Evid.R. 804—Hearsay exceptions—Decision whether to admit hearsay*
*statement of unavailable declarant pursuant to Evid.R. 804(B)(3) is within*
*discretion of trial court.  A decision whether to admit the hearsay statement*
*of an unavailable declarant pursuant to Evid.R. 804(B)(3) is one within the*
*discretion of the trial court.*

(No. 92-1916—Submitted February 1, 1994—Decided April 27, 1994.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 60596.

———————————

{¶ 1} Defendant-appellee, Ross Sumlin, was convicted in the Court of Common Pleas of Cuyahoga County on two counts of felonious assault with firearm specifications.  Testimony of witnesses presented by the state at appellee's trial placed him at the scene of a shooting which occurred on March 9, 1990 on East 93rd Street in Cleveland, Ohio.  Alexander Jefferson testified that appellee fired a gun twice at him, but the first shot was a blank and the second shot missed. Jefferson further testified that appellee thereafter handed the gun to another man, Lorenzo Younger, who fired the gun at Jefferson's companion, William Jordan, striking Jordan in the leg.

{¶ 2} Jordan similarly testified that appellee fired shots at Jefferson before handing the gun to Younger, who then shot Jordan in the leg.  Both Jefferson and Jordan specifically identified appellee as the one who fired the gun at Jefferson. Another witness, Henry J. Taylor, Jr., identified appellee as one of the persons present at the scene shortly after the shooting, although Taylor did not see the shooting itself.

{¶ 3} Appellee testified in his own defense that he was not present at the time of the shooting. Appellee's sister, Wendy Sumlin, testified that appellee was elsewhere with her at the time the incident occurred.

{¶ 4} Appellee testified that after he left the courtroom on the first day of trial, September 12, 1990, slightly more than six months after the day of the shooting, he encountered Younger for the first time since the incident. Appellee testified that Younger wrote two notes on the evening of September 12, 1990 regarding the incident. Wendy Sumlin also testified concerning the notes, stating that she observed Younger write them.

{¶ 5} The first note reads:

"Dear Mr. Judge

"Im writing you to tell you Mr Ross sumlin did not have any thing to do with William getting shot. he just dropped me off at burger King and i was walking home when William, ike, Spud walked up on me and William punched me in the face and spud snatched my bag of food so i went on home and called my friend to bring me a gun so he came and left so i sat on my front porch and they walked passed and came in my driveway trying to jump me so i chased them out of my yard with the gun down to SKD lounge and started shooting at them and i shot William and ran to 73rd and Central where i was arrested 30 minutes later

"Sign Manky

"B.K.A

"Lonzo Younger"

{¶ 6} The second note reads:

"Dear Society

"I Know I Did Wrong by shooting Will so im going to shoot myself

"Sign

"Manky

"BKA

"Lonzo Younger"

{¶ 7} Younger took the stand at appellee's trial, but refused to answer questions, invoking the privilege against self-incrimination. When appellee sought to have the notes entered into evidence, the trial judge determined that they were hearsay statements. Appellee attempted to utilize the hearsay exception for a statement against interest, Evid.R. 804(B)(3), to admit the notes written by Younger into evidence. The trial judge refused to admit the notes.

{¶ 8} The court of appeals, in a split decision, reversed the conviction and remanded the cause, holding that the notes should have been admitted into evidence for the jury's consideration.

{¶ 9} The cause is now before this court pursuant to the allowance of a motion for leave to appeal.

_____

*Stephanie Tubbs Jones*, Cuyahoga County Prosecuting Attorney, and *Elaine Welsh*, Assistant Prosecuting Attorney, for appellant.

*Gail Rose Kane*, for appellee.

_____

**ALICE ROBIE RESNICK, J.**

{¶ 10} The issue presented is whether the trial court committed reversible error by declining to admit the notes into evidence, either pursuant to the statement against interest exception to the hearsay rule, or pursuant to general principles of due process. For the reasons which follow, we find that the trial court did not commit reversible error. We reverse the judgment of the court of appeals.

{¶ 11} The trial court correctly determined that the statements in the notes were hearsay. Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 802 requires that hearsay be inadmissible unless rule, statute or constitutional provision provides otherwise. Thus, unless one

of those vehicles supports the introduction of the notes into evidence, the notes are inadmissible.

{¶ 12} Evid.R. 804(B) provides:

"Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

"***

"(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

{¶ 13} Evid.R. 804(B)(3) applies only when the declarant is not available. Younger invoked his privilege against self-incrimination at trial, and refused to answer questions. Therefore, pursuant to Evid.R. 804(A)(1), which defines "unavailability as a witness" to include a situation where the declarant "is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement," Younger was an unavailable witness.

{¶ 14} Because Younger was unavailable, his statements (the notes) even though hearsay, would have been admissible into evidence as an exception to the hearsay rule if two additional conditions contained in Evid.R. 804(B)(3) were met. The first requirement is that the notes must have "so far tended to subject [Younger] *** to criminal liability *** that a reasonable man in his position would not have made the statement[s] [contained in the notes] unless he believed [them] to be true." For purposes of this discussion, we assume that at least a part of the contents of the

4

notes qualifies as a statement which sufficiently subjected Younger to criminal liability so that this condition was fulfilled.

{¶ 15} Evid.R. 804(B)(3) imposes an additional requirement when a statement against interest tends to "expose the declarant to criminal liability." Such a statement, "whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."[1] Contained within this requirement are significant hurdles which must be overcome by the proponent of the statement. See *United States v. Salvador* (C.A.2, 1987), 820 F.2d 558, 561 ("The structure of the sentence and its wording demonstrate the obvious suspicion with which the drafters of the Rule regarded a statement exposing 'the declarant to criminal liability' but exculpating the accused."). The statement will *not* be admissible *unless* accompanied by "corroborating circumstances." The corroboration must "*clearly* indicate" that the statement is "trustworthy." *Id.*

{¶ 16} A decision whether to admit the hearsay statement of an unavailable declarant pursuant to Evid.R. 804(B)(3) is one within the discretion of the trial court. See *State v. Landrum* (1990), 53 Ohio St.3d 107, 114, 559 N.E.2d 710, 720 ("The determination of whether corroborating circumstances are sufficient to admit statements against penal interest, as a hearsay exception, generally rests within the discretion of the trial court."). See also, *United States v. Salvador*, *supra*, 820 F.2d at 561.

{¶ 17} We are not convinced that the trial court abused its discretion in refusing to admit the notes into evidence pursuant to Evid.R. 804(B)(3). While

---

1. Fed.R.Evid. 804(b)(3) differs from Ohio's Evid.R. 804(B)(3) in that the federal rule reads that a statement "offered to *exculpate* the accused" must be accompanied by corroborating circumstances, while Ohio's rule applies to a statement, "whether offered to *exculpate* or *inculpate* the accused ***." (Emphasis added.) Since this case is not about the admissibility of a statement offered to inculpate the accused, the difference between the two rules does not come into play, and we may look to cases interpreting the federal rule as persuasive precedent.

some of the circumstances surrounding the statements may appear to corroborate their trustworthiness (*e.g.*, appellee's sister also testified that appellee was not present when the shots were fired), other circumstances provide reasons to doubt the statements' trustworthiness. For instance, Younger, not seen by appellee for over six months, surfaced after the first day of appellee's trial, wrote notes arguably exonerating appellee, wrote the notes only in the presence of persons interested in appellee's acquittal, and then refused to testify at appellee's trial. Furthermore, the statements are ambiguous as to whether, and to what extent, they actually do exonerate appellee. Younger's statements reveal that appellee had nothing to do with William Jordan's being shot. However, that is not necessarily inconsistent with evidence presented by the state at trial, as both Jefferson and Jordan testified that it was Younger, not appellee, who shot Jordan. While the statements imply that appellee was not at the scene when shots were fired, the statements' principal focus is on what Younger did, not on what appellee did not do.

{¶ 18} Moreover, in a typical Evid.R. 804(B)(3) statement against penal interest case, in which there is only one accused perpetrator, a declarant's statement subjecting the declarant to criminal liability completely exonerates the accused. In this typical scenario, the declarant basically claims responsibility for the crime, so that if the declarant is telling the truth, the accused could not have done the act. In part, the relative trustworthiness of the statement is in the declarant's assumption of the threat of punishment.

{¶ 19} This case presents a different setting, with a difference that weighs against the statements' trustworthiness. The state presented testimonial evidence that Younger and appellee both participated in the incident. Even if Younger stated that appellee did not so participate, Younger was still subject to the same threat of criminal prosecution as before. In short, Younger's notes allegedly exculpating appellee did not increase the likelihood that Younger would be implicated. Younger's statements can be separated into two parts, one part which exonerates

appellee and a second part which admits Younger's own guilt. This is not a situation where the declarant's statement substitutes the declarant for the accused as the single culprit. While this difference from the traditional application of this hearsay exception is not dispositive of the trustworthiness of the statements, it is one additional concern which calls into question the statements' reliability, further supporting our determination that the trial court did not abuse its discretion by not allowing the notes into evidence.

{¶ 20} Having determined that the trial court did not abuse its discretion in declining to allow the statements into evidence pursuant to Evid.R. 804(B)(3), we consider whether fundamental principles of due process required the trial court to admit the statements.

{¶ 21} In *Chambers v. Mississippi* (1973), 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297, the United States Supreme Court considered whether a defendant's right to a fair trial was violated when the accused was not allowed to enter into evidence hearsay statements made by a declarant admitting responsibility for commission of a murder and exonerating the accused. Mississippi rules of evidence at the time did not allow a declarant's statement against penal interest to be admissible into evidence as an exception to the hearsay rule, regardless of the reliability of the statement. *Id.*, 410 U.S. at 299, 93 S.Ct. at 1048, 35 L.Ed.2d at 311. The *Chambers* court found that the defendant's due process right to a fair trial was violated under the facts and circumstances of the case (in that defendant was not allowed to present reliable evidence) and reversed the murder conviction. 410 U.S. at 302-303, 93 S.Ct. at 1049, 35 L.Ed.2d at 313. In *Green v. Georgia* (1979), 442 U.S. 95, 97, 99 S.Ct. 2150, 2152, 60 L.Ed.2d 738, 741, the Supreme Court, citing *Chambers*, stated that "'the hearsay rule may not be applied mechanistically to defeat the ends of justice.'" See *State v. Landrum*, *supra*, 53 Ohio St.3d at 114, 559 N.E.2d at 720, quoting *Chambers* and *Green* for the same proposition.

**{¶ 22}** In *Chambers*, 410 U.S. at 300-301, 93 S.Ct. at 1048-1049, 60 L.Ed.2d at 311-312, the Supreme Court listed four reasons why the statements against penal interest of the declarant were sufficiently reliable that they should have been admitted into evidence, even though they were not covered by a recognized state hearsay exception. Those factors were: (1) the spontaneity of the statements, (2) the statements were corroborated by other evidence, (3) the statements were self-incriminating and against penal interest, and (4) the declarant was available for cross-examination.

**{¶ 23}** While we recognize that the indicia of reliability present in *Chambers* very much depended on the specific circumstances of that case, consideration of the *Chambers* factors in this case illustrates that Younger's notes are not such reliable evidence that a finding of non-admissibility violates appellee's right to a fair trial. The notes were not spontaneously written shortly after the incident, but were written more than six months later, under suspicious circumstances. As discussed above, the corroborating circumstances did not clearly indicate the notes' trustworthiness. Even accepting that the notes were self-incriminating and against Younger's penal interest, witnesses already had identified Younger as a participant in the shooting, so that exculpation of appellee did not make it more likely that Younger would be punished. Finally, Younger was not available for cross-examination, during which the ambiguities in the notes could have been explored.

**{¶ 24}** Through Evid.R. 804(B)(3), Ohio has addressed one of the principal concerns of cases such as *Chambers*, which is that a criminal defendant's reliable evidence should not be excluded through application of hearsay rules that do not adequately protect due process rights. Evid.R. 804(B)(3) strikes a balance between hearsay statements against penal interest which are sufficiently trustworthy to be admissible and those which are not. Corroborating circumstances did not so clearly indicate the trustworthiness of Younger's statements that the trial court abused its

discretion in declining to allow the notes into evidence pursuant to Evid.R. 804(B)(3). Moreover, because the reliability of the statements was not established, the failure to admit them into evidence did not violate appellee's constitutional right to a fair trial. The judgment of the court of appeals is reversed, and the judgment of the trial court is reinstated.

*Judgment reversed.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., concur.

WRIGHT, J., concurs in the syllabus and judgment only.

————————————