OPINION
{¶ 1} Appellant Chad Lamar Mayle appeals from his conviction and sentence for complicity to murder in the Stark County Court of Common Pleas. The relevant facts leading to this appeal are as follows.
 {¶ 2} On April 5, 2001, Matthew Daviduk, Jason Wolfe, Jennifer Himes, Allyson McCullough, and Tisha Mayle got together to drink beer at Daviduk's residence. Daviduk expressed that he was angry with appellant because of a dispute over Daviduk's alleged rude treatment of Nikita Morgan, appellant's sister. That evening, the group got in Himes' car, a Ford Contour, and proceeded to appellant's home on Tenth St. S.W. in Canton after stopping for more beer. Daviduk used the car's horn to draw appellant's attention. However, the first two persons to come outside were Nikita and appellant's mother, Tammy Swogger. Tammy began yelling at the car's occupants and striking the vehicle. At Daviduk's behest, Himes (Daviduk's cousin) exited the car and commenced fighting with Tammy, who thereupon was assisted by Nikita. Tammy's husband, Glenn Swogger, wearing no clothing, came outside armed with a golf club. Glenn was quickly followed outside by appellant, also carrying a golf club. Daviduk and the others eventually jumped out of the car as well.
 {¶ 3} Wolfe was among those who came out of the car. He later testified that he witnessed appellant strike Himes in the head with his golf club, swinging it like a bat. Himes fell to the ground, where Tammy and Nikita continued to kick and stomp on her. Appellant turned his attention to the vehicle, striking the windows with the club. Daviduk and company returned to the car and retreated from the scene, leaving behind the seriously wounded Himes. Police and paramedics arrived, transporting Himes to the hospital. She lingered for three days, but was then removed from life support. The coroner listed her cause of death as multiple blunt trauma to the head.
 {¶ 4} The Stark County Grand Jury indicted appellant[1] on one count of complicity to murder for the death of Jennifer Himes. Appellant pled not guilty and the matter proceeded to a jury trial. At the close of the state's evidence, defense counsel made several motions for mistrial, one on grounds that the photographs of Himes' injuries shown to the jury were unduly graphic. Defense counsel also moved for acquittal pursuant to Crim.R. 29. Said motions were overruled. Appellant was thereafter found guilty and sentenced to an indeterminate term of fifteen years to life imprisonment.
 {¶ 5} Appellant obtained leave from this Court to file a delayed appeal, and he herein raises the following three Assignments of Error:
 {¶ 6} "I. The trial court erred in not admitting the statements of Jason Brown, Douglas Boles and Brian Wade to the jury and thus violated the appellant's constitutional right to a fair trial.
 {¶ 7} "II. The trial court erred in allowing the introduction of the autopsy photos and failing to declare a mistrial after an employee from the prosecution's office passed out during the display of these gruesome photographs of the victim.
 {¶ 8} "III. Whether the jury verdict finding appellant guilty of complicity to murder was against the manifest weight of the evidence in violation of the due process clause of the Fourteenth amendment to the United States Constitution."
 I. {¶ 9} In his First Assignment of Error, appellant argues the trial court deprived him of a fair trial by excluding testimony by three men who intended to testify to the jury concerning alleged jailhouse admissions to the murder made by Glenn Swogger. We disagree.
 {¶ 10} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,180. As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. Our task is to look at the totality of the circumstances in the case sub judice, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. State v. Oman (Feb. 14, 2000), Stark App. No. 1999CA00027, unreported, at 2.
 {¶ 11} Evid.R. 804(B)(3) provides a recognized hearsay exception where the declarant is unavailable as a witness:
 {¶ 12} "(3) Statement against interest. A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."
 {¶ 13} In the case sub judice, the trial court first heard, outside the presence of the jury, statements from Glenn Swogger and his attorney. Based on the representation to the trial court that Swogger would be invoking his right against self-incrimination, the court found Swogger to be an unavailable declarant. Appellant thereupon called to the stand Jason Brown, Douglas Boles, and Brian Wade, again outside the presence of the jury. Brown proffered that Swogger, during their stint at the Stark County Jail, claimed to have hit Himes with a club on the right side of the face. Boles, another prisoner at the Stark County Jail, heard Swogger say he had "flipped" on the night of the fight and hit Himes with a club. Boles recalled that he called himself "Swogger Woods." Wade also knew Swogger from the jail, and recalled that Swogger once bragged he would be the next Tiger Woods. At one point, Daviduk was in the jail as well; Wade stated he heard Swogger threaten to beat Daviduk like he beat his cousin.
 {¶ 14} In reaching its decision to exclude the testimony of the aforesaid jail colleagues of Swogger, the trial court stated in pertinent part as follows:
 {¶ 15} "So lastly I come to probably the most important test which we were looking at is the corroborating, corroboration factors to guarantee the statements have the indicia of trustworthiness.
 {¶ 16} "Now, in viewing that the Court has to look at the context of where these statements were made at, in jail or over the phone while in jail.
 {¶ 17} "Clearly there is no indication or evidence given that there were any confidential relationships established between any of these parties so that an individual making a statement against his penal interest would think somehow that those statements would be kept quiet.
 {¶ 18} "As it relates to Jason Browne, the Court finds that he gave contradictory statements and therefore the statements are not trustworthy.
 {¶ 19} "As it relates to Doug Bolds, No. 1, he is a convicted felon on more than one occasion which goes to his credibility and clearly he had a beef with Mr. Swogger, clearly was not a friend who would inspire confidence; and the Court finds his statements not to be, the statements given to him would not be trustworthy.
 {¶ 20} "Brian Wade, again a convicted felon and also an individual who has given contradictory statements all of which lead this Court to find that these witnesses are not going to be allowed to testify, the Court finding that the indicia of trustworthiness of the statements attributed to the declarant can not be found and the Court is not going to allow their testimony." Judgment Entry at 2.
 {¶ 21} A decision whether to admit the hearsay statement of an unavailable declarant pursuant to Evid.R. 804(B)(3) is one within the discretion of the trial court. State v. Sumlin (1994) 69 Ohio St.3d 105,108, 630 N.E.2d 681, citing State v. Landrum (1990), 53 Ohio St.3d 107,114, 559 N.E.2d 710. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. Upon review of the record, we are unable to conclude the trial court abused its discretion in reaching the aforecited conclusions.
 {¶ 22} Appellant's First Assignment of Error is overruled.
 II. {¶ 23} In his Second Assignment of Error, appellant argues the trial court erred in allowing into evidence certain autopsy photos, during the presentation of which a prosecutor's office employee passed out in the courtroom. We disagree.
 {¶ 24} Under Evidence Rules 403 and 611(A), the admission of photographs is left to the sound discretion of the trial court. State v.Landrum (1990), 53 Ohio St.3d 107, 559 N.E.2d 710. See also State v.Maurer (1984), 15 Ohio St.3d 239, 473 N.E.2d 768. Under Evidence Rule 403(A), the probative value of the evidence must be weighed against the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Evid.R. 611(A) further provides, in relevant part, the trial court "shall exercise reasonable control over the mode and order of . . . presenting evidence so as . . . to make the . . . presentation effective for the ascertainment of the truth" and to "avoid needless consumption of time." "Although a photograph may be rendered inadmissible by its inflammatory nature, the mere fact that it is gruesome or horrendous is not sufficient to render it inadmissible if the trial court, in the exercise of its discretion, feels that it would prove useful to the jury." State v. Woodard (1966), 6 Ohio St.2d 14, 25,215 N.E.2d 568. "The real question is whether the probative value of such photographs is outweighed by the danger of prejudice to the defendant." Woodard at 25, 215 N.E.2d 568.
 {¶ 25} In the case sub judice, the trial court admitted several photographs of the autopsy of Himes, all of which depicted the injuries to her head, including a depiction supporting the coroner's opinion that at least one blow was caused by severe blunt force trauma. Appellant specifically argues that the trial court abused its discretion in admitting the photographs because any probative value was outweighed by the prejudicial impact and because the number of photographs was repetitive and cumulative. In overruling appellant's objection, the trial court indicated that "the injuries to the victim and the importance with regard to the cause of death and what blow or blows may have caused the death and to what area of the body" warranted presentation to the jury. Tr. at 740. In addition, although appellant asserts that a prosecutor's office employee in the courtroom fainted because of the deputy coroner's testimony, the record does not definitively reveal whether that event was caused by the photographs. See Tr. at 758. Under the circumstances in this case, we find the probative value of the photographs accentuated by the jury's need to ascertain whether Himes was struck by a weapon, the specifics of Himes' head injuries, and the impact of the beating she received from the other participants in the fight. We therefore are unpersuaded, upon review, that the trial court abused its discretion in admitting the autopsy photographs, and in finding the danger of undue prejudice caused by admission of the photographs did not substantially outweigh their probative value.
 {¶ 26} Appellant's Second Assignment of Error is overruled.
 III. {¶ 27} In his Third Assignment of Error, appellant argues that his conviction is against the manifest weight of the evidence. We disagree.
 {¶ 28} Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also, State v. Thompkins
(1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175, 485 N.E.2d 717.
 {¶ 29} The following witnesses were heard at trial during the state's case-in-chief: Canton Police Officers Gordon and Lombardi; Canton Firefighter-Paramedic Rusty Sparks; the aforementioned Wolfe, McCollough, and Daviduk; bystander Diane James; Canton Police Detective Jeff Ramser; Michelle Foster, Jennifer Bloink, and Dennis Florea of the Stark County Crime Lab; Chief Deputy Coroner Dr. Murthy; Sergeants Pressley and Baroni of the Canton Police Detective Bureau; and Ralph Scott, the victim's stepfather. According to the testimony of the crime lab personnel, two of the golf clubs obtained at the scene had blood on them. On one, a Synchron II driver, the blood was matched with Himes'. On the second, a Wilson five iron, the blood was determined substantially likely to be Glenn Swogger's. Dr. Murthy testified that in addition to multiple skull fractures and hemorrhagic contusions to the brain, Himes suffered a noticeable impact injury to the right side of her head which was caused by severe blunt force, consistent with being caused by a golf club.
 {¶ 30} The defense, after unsuccessfully seeking to introduce testimony by the aforementioned three alleged jailhouse confidants, presented testimony by Arlis and Debbie Johnson, acquaintances of appellant, as well as Tisha Mayle (no relation), who was part of the group that departed from Daviduk's house on April 5, 2002. The defense then briefly called the assistant prosecutor who handled the case against Daviduk. Finally, appellant took the stand in his own defense. He did not deny being at the scene of the disturbance, but denied any physical contact with Himes.
 {¶ 31} Appellant emphasizes that Wolfe was the only eyewitness to recall appellant being near the driver's side of the Ford Contour where Himes was situated, or to testify seeing appellant swing the golf club at Himes' head. He further notes that several witnesses' testimony suggested that Wolfe was not in the vicinity of Himes or the Ford Contour during the beating incident, and that Wolfe was picked up by the fleeing vehicle around the corner. Appellant also points out that Diane James, the sole third-party eyewitness, did not see appellant near Himes, but did recall a nude Glenn Swogger breaking car windows with his own golf club and then grabbing Himes by the arm. However, appellant admitted to obtaining and using a golf club to damage car windows that night; and, according to Allyson McCullough, appellant used a "baseball swing" to accomplish that particular task. Tr. at 429. While no one recalled seeing appellant strike a vicious blow to Himes, other than Wolfe, we note that there were no eyewitnesses at all to substantiate the theory that Glenn Swogger hit Himes with a club. It is also noteworthy that Daviduk, while not claiming to have observed appellant strike Himes, nonetheless shared Wolfe's fate in subjecting himself to the risk of prosecution for a baseball-bat assault on appellant several days later, strongly suggesting the duo's plan of revenge against appellant for the attack on Himes. Furthermore, as the state responds, the witnesses may very well have been more often observant of Glenn Swogger's actions due to the unexpected sight of a nude person on a public street.
 {¶ 32} We have reviewed the record in the case of sub judice and are unpersuaded by appellant's contention that the jury's verdict led to a manifest miscarriage of justice. As we have often emphasized, the trier of fact, as opposed to this Court, is in a far better position to weigh the credibility of witnesses. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212. The implicit credibility conclusions of the jurors are not a sufficient basis for now claiming they effectively lost their way under the circumstances of this case. The jury's verdict was not against the manifest weight of the evidence.
 {¶ 33} Appellant's Third Assignment of Error is overruled.
 {¶ 34} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
By: Wise, J., Gwin, P.J., and Boggins, J., concur.
Topic: Complicity to Murder.
[1] Appellant was seventeen at the time of the offense, but was tried as an adult.