The STATE of Ohio, Appellee,

v.

DURANT, Appellant.

[Cite as *State v. Durant*, 159 Ohio App.3d 208, 2004-Ohio-6224.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19715.

Decided Nov. 19, 2004.

R. Lynn Nothstine, for appellee.

Edward C. Redder, for appellant.

FREDERICK N. YOUNG, Judge

{¶ 1} Harold Durant Jr. appeals from his conviction and sentence on two counts of aggravated trafficking of crack cocaine in the vicinity of a juvenile.

{¶ 2} Durant advances three assignments of error on appeal. First, he contends that the trial court erred by preventing him from introducing testimony

about another person's confession to committing one of the offenses at issue. Second, he claims that the trial court erred by preventing him from cross-examining a key government witness about pending criminal charges. Third, he argues that the cumulative effect of the foregoing errors deprived him of a fair trial.

{¶ 3} For the reasons set forth below, we find no abuse of discretion in the trial court's evidentiary ruling precluding testimony about another person's confession. We do find, however, that the trial court abused its discretion in preventing defense counsel from crossexamining a key witness for the prosecution about pending criminal charges. Finally, we reject Durant's argument that "cumulative error" deprived him of his right to a fair trial. But because we believe the trial court's refusal to permit cross-examination about pending criminal charges constituted prejudicial error, we will reverse Durant's convictions and remand the cause for further proceedings.

## I. Factual Background

{¶ 4} The present appeal stems from controlled drug buys made by paid police informant and admitted drug user Randy Riley on May 8, 2002, and May 14, 2002. According to Riley's trial testimony, he contacted Dayton Police Detective Mark Stapleton prior to the first buy and told him that Durant had a "pretty good quantity" of crack cocaine. As a result, Stapleton gave Riley money and dropped him off near Durant's home on May 8, 2002. Riley testified that he then entered the residence and purchased approximately one gram of crack cocaine from Durant.

{¶ 5} Following the May 8, 2002, incident, Stapleton arranged for Riley to make a larger purchase. On May 14, 2002, he gave Riley $750 and told him to buy an ounce of crack cocaine. Stapleton also assembled a team of police officers to raid and to search Durant's home after the purchase. Riley testified that on this occasion he performed essentially the same routine as he had a few days earlier. After being dropped off by Stapleton, he entered the residence and purchased crack cocaine from Durant.

{¶ 6} Although the police team had anticipated raiding the home shortly after the controlled buy, the plan changed when Durant and a person later identified as Robert Bach left in a pickup truck. Rather than raiding the home, Stapleton and other officers followed the truck to a shopping center parking lot, where Durant and Bach were taken into custody and searched. No money or crack cocaine was found on Durant, who was carrying only a small quantity of marijuana. The search of Bach revealed that he had $750 in currency that matched the serial numbers of the money given to Riley for the drug purchase. Bach told an officer that Durant had given him the money.

{¶ 7} Police then returned Durant and Bach to the residence and executed a search warrant. The search uncovered scales with apparent drug residue, a razor blade, and a gun. Upon questioning, Durant initially denied selling crack cocaine to Riley on May 14, 2002. Detective Stapleton testified that Durant later changed his story, however, and admitted having sold the drugs to Riley. For his part, Bach told Stapleton that Durant had handed him the $750 while they were driving in the pickup truck.

{¶ 8} The only defense witness at trial was the appellant's wife, Jennifer Durant. She testified that she had no recollection of Riley's coming to her residence on May 8, 2002. With regard to the May 14, 2002, incident, Mrs. Durant testified that she and the appellant were watching a movie with Bach when Riley came to the door. According to Mrs. Durant, Riley and Bach went into the kitchen while she and the appellant continued watching the movie. She did not see any crack cocaine. Mrs. Durant testified that after Bach returned from the kitchen, he asked the appellant to drive him to a Kroger store. Mrs. Durant did not see the appellant or Bach again until they returned with the police officers who executed the search warrant.

{¶ 9} Defense counsel also had anticipated calling Bach as a witness. He failed to appear, however, despite the issuance of a subpoena and a material-witness warrant. As a result of Bach's unavailability, Durant's trial attorney, Pamela Pinchot, sought to withdraw as counsel so she could testify as a defense witness. She informed the trial court that Bach and Durant had appeared at her office approximately a week before trial, and Bach had expressed a desire to talk to her. After Pinchot advised Bach of his right to an attorney, he proceeded to confess to her that he had sold the crack cocaine to Riley on May 14, 2002. Although Bach put his confession in writing, he refused to have the written confession notarized, stating, "I'm going to get in trouble by doing this." The trial court declined to admit Pinchot's testimony about Bach's confession as a hearsay exception under Evid.R. 804(B)(3), finding that the confession was not sufficiently trustworthy. The jury later convicted Durant on both of the charges against him, and the trial court sentenced him to concurrent five-year prison terms. This timely appeal followed.

II. Analysis

{¶ 10} In his first assignment of error, Durant contends that the trial court erred by preventing him from introducing his attorney's testimony about Robert Bach's confession to selling the crack cocaine on May 14, 2002. Durant insists that Bach's confession in defense counsel's office was admissible under Evid.R. 804(B)(3), which creates a hearsay rule exception for statements against a declarant's penal interests. In response, the state argues that the trial court

properly precluded testimony about Bach's confession because the circumstances surrounding the making of the statement did not clearly indicate its trustworthiness.

{¶ 11} Upon review, we conclude that the trial court did not abuse its discretion in precluding testimony about Bach's out-of-court confession to defense counsel.[1]  Evid.R. 804(B)(3) provides:

{¶ 12} "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

{¶ 13} "* * *

{¶ 14} "(3) *Statement against interest.*  A statement that * * * so far tended to subject the declarant to * * * criminal liability * * * that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true.  A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

{¶ 15} In the context of this case, Bach's confession was admissible under Evid.R. 804(B)(3) if (1) he was unavailable to testify at trial, (2) the confession tended to subject him to criminal liability so that a reasonable person in his position would not have made the confession unless he believed it to be true, and (3) corroborating circumstances clearly indicated the trustworthiness of the confession.

{¶ 16} The state does not dispute that the first two requirements were satisfied.  Bach was "unavailable" for trial within the meaning of Evid.R. 804(B) because Durant was unable to procure his attendance despite the issuance of a subpoena and a material-witness warrant.  See Evid.R. 804(A) (identifying situations in which a declarant will be deemed unavailable).  The confession also tended to subject Bach to criminal prosecution.  Defense counsel informed the trial court that Bach had confessed to her that he, not Durant, had sold the crack cocaine to Randy Riley on May 14, 2002.  This statement was squarely against Bach's penal interest.

{¶ 17} The crucial issue on appeal is whether the trial court abused its discretion in finding that corroborating circumstances failed to clearly indicate the trustworthiness of the confession.  In order to resolve this issue, we first must determine precisely what "corroborating circumstances" may be relied upon

1.  "A decision whether to admit the hearsay statement of an unavailable declarant pursuant to Evid.R. 804(B)(3) is one within the discretion of the trial court."  *State v. Sumlin* (1994), 69 Ohio St.3d 105, 108, 630 N.E.2d 681.

to establish the trustworthiness of a statement under Evid.R. 804(B)(3). The state claims that the only relevant circumstances are those that surround the making of the statement. According to the state, the existence of other evidence to corroborate the statement is irrelevant. For his part, Durant argues that a statement may be corroborated under Evid.R. 804(B)(3) by both the circumstances surrounding the making of the statement and other evidence that is corroborative.

{¶ 18} In support of its position, the state relies primarily on *State v. Madrigal* (2000), 87 Ohio St.3d 378, 721 N.E.2d 52, and *Lilly v. Virginia* (1999), 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117. We note, however, that these are Confrontation Clause cases in which the government sought to use statements by a nontestifying accomplice against the defendant. When Confrontation Clause concerns are at issue, the law is clear that the only pertinent corroborating circumstances are those that surround the making of the statement. The fact that some other evidence may corroborate the declarant's statement is irrelevant in a Confrontation Clause analysis. *Madrigal*, 87 Ohio St.3d at 387, 721 N.E.2d 52; *Lilly*, 527 U.S. at 137–138, 119 S.Ct. 1887, 144 L.Ed.2d 117; see, also, *State v. Issa* (2001), 93 Ohio St.3d 49, 60, 752 N.E.2d 904, *State v. Yarbrough*, 95 Ohio St.3d 227, 234–235, 2002-Ohio-2126, 767 N.E.2d 216.

{¶ 19} A different rule applies when a defendant seeks to exonerate himself by asserting a right under the Due Process Clause to introduce a declarant's statement against interest. In *Chambers v. Mississippi* (1973), 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297, the United States Supreme Court held that due process "affords criminal defendants the right to introduce into evidence third parties' declarations against penal interest—*their confessions*—when the circumstances surrounding the statements 'provid[e] considerable assurance of their reliability.'" *Lilly*, 527 U.S. at 130, 119 S.Ct. 1887, 144 L.Ed.2d 117, quoting *Chambers*, 410 U.S. at 300, 93 S.Ct. 1038, 35 L.Ed.2d 297. In the due process context, the Ohio Supreme Court has recognized that relevant corroborating circumstances include not only those surrounding the actual making of the statement but also any other corroborating evidence. *Yarbrough*, 95 Ohio St.3d at 238, 767 N.E.2d 216, fn. 2 ("Although 'the fact that other evidence corroborates the statement is irrelevant' to the Confrontation Clause analysis when the state attempts to introduce a statement against interest * * *, the same is not true when the defense attempts to introduce such a statement as a matter of due process"); see, also, *Chambers*, 410 U.S. at 300, 93 S.Ct. 1038, 35 L.Ed.2d 297 (relying in part on the fact that third-party confessions were corroborated by "some other evidence in the case" to find that the defendant had a due process right to introduce the confessions).

{¶ 20} Unfortunately for Durant, he never argued in the trial court, and does not attempt to assert on appeal, that he had a constitutional due process right to

introduce testimony about Bach's confession to his attorney. Instead, his only argument is that Bach's confession is admissible under Evid.R. 804(B)(3). The foregoing discussion of case law under the Confrontation and Due Process Clauses is nevertheless instructive because the Ohio Supreme Court has looked to such case law to resolve issues arising under Evid.R. 804(B)(3).

{¶ 21} In *State v. Landrum* (1990), 53 Ohio St.3d 107, 559 N.E.2d 710, the defendant invoked Evid.R. 804(B)(3) to introduce a third-party's out-of-court statement confessing to a crime. The Ohio Supreme Court held that the confession was sufficiently reliable to be admissible under the evidence rule. Notably, the *Landrum* court followed *Chambers,* a due process case, and considered other evidence (i.e., evidence other than the circumstances surrounding the making of the statement), including a lack of blood on the defendant's clothing, to corroborate the confession. Id. at 114, 559 N.E.2d 710. Likewise, in *State v. Sumlin* (1994), 69 Ohio St.3d 105, 630 N.E.2d 681, the defendant sought to use Evid.R. 804(B)(3) to introduce written notes that were against the penal interest of an unavailable witness. Upon review, the Ohio Supreme Court found no abuse of discretion in the trial court's ruling that the notes were not sufficiently corroborated to be trustworthy. The *Sumlin* court considered evidence other than the circumstances immediately surrounding the writing of the notes to make this determination.[2]

{¶ 22} In the present case, Durant sought to use Bach's out-of-court confession to exonerate himself. Thus, the situation before us is analogous to *Landrum* and *Sumlin,* in which the Ohio Supreme Court considered circumstances beyond those immediately surrounding the making of a statement when assessing its trustworthiness under Evid.R. 804(B)(3). As a result, we conclude that it is appropriate for us to consider other evidence when evaluating the trustworthiness of Bach's confession to defense counsel. Having resolved that threshold issue, we turn now to the evidence before us.

{¶ 23} Bach appeared at the office of defense counsel Pamela Pinchot approximately one week before trial, accompanied by Durant. According to

---

**2.** It is much less clear under Evid.R. 804(B)(3) whether relevant corroborating circumstances may extend beyond circumstances surrounding the actual making of a statement *when the state seeks to use the statement against a defendant.* In *Yarbrough,* supra, the state invoked Evid.R. 804(B)(3) to introduce a third party's out-of-court statement and use it against the defendant. *Yarbrough,* 95 Ohio St.3d at 233–234, 767 N.E.2d 216. The Ohio Supreme Court found the statement sufficiently corroborated to be trustworthy under both Evid.R. 804(B)(3) and the Confrontation Clause. In reaching this conclusion, the justices addressed the trustworthiness issue under the evidence rule and the Confrontation Clause together, and they relied solely on Confrontation Clause jurisprudence, which, as noted above, limits corroborating circumstances to those that surround the making of the statement and declares all other corroborating evidence irrelevant. Id. at 234–236, 767 N.E.2d 216.

Pinchot, she advised Bach of his right to an attorney, and he then confessed that he had sold the crack cocaine to Randy Riley in the Durants' home on May 14, 2002. Pinchot also told the trial court that Bach gave her a signed, written statement to that effect but refused to have it notarized because he feared getting "in trouble by doing this." Defense counsel argued that three facts in particular clearly indicated the trustworthiness of the confession: (1) Bach came to her office voluntarily, (2) his confession would be corroborated by Jennifer Durant's trial testimony that Bach sold the drugs to Riley on May 14, 2002, and (3) police caught Bach shortly after the drug transaction with the purchase money in his pocket.

{¶ 24} The trial court nevertheless found Bach's confession insufficiently trustworthy to be admissible under Evid.R. 804(B)(3), stating:

{¶ 25} "I'm coming down with the conclusion that it is not sufficiently reliable. It certainly is not clearly trustworthy because we have a witness [Bach] who indicated on the date of the event that the money did not belong to him, that he got it from the defendant. And there really is no other corroboration at this point. I know that you had mentioned that the wife might come in and testify, but this was done by Mr. Bach.

{¶ 26} "I don't find that sufficiently corroborative when the spouse will testify. I also find that to do this six months later, six months after the whole deal went down, also gives an indicia of unreliability."

{¶ 27} Upon review, we are not convinced that the trial court abused its discretion in finding Bach's confession insufficiently reliable under Evid.R. 804(B)(3). As the Ohio Supreme Court observed in *Sumlin*, 69 Ohio St.3d 105, 630 N.E.2d 681, syllabus, the rule requires corroborating evidence to "clearly indicate" the trustworthiness of a statement tending to expose the declarant to criminal liability. See, also, *Landrum*, 53 Ohio St.3d at 114, 559 N.E.2d 710 (noting that the inference of trustworthiness must be "strong" for a statement to be admissible under Evid.R. 804[B][3]). In this case, some circumstances do support the trustworthiness of Bach's confession. The fact that police caught Bach with the purchase money in his pocket obviously tends to corroborate his statement that he sold the drugs to Riley. Testimony from Durant's wife that Bach sold the drugs also provides some corroboration for his confession. It also might be true that Bach made the confession voluntarily.

{¶ 28} Bach, however, came to Pinchot's office accompanied by Durant and made the confession only in the presence of persons interested in Durant's acquittal. These facts reasonably may be found to militate against the reliability of the confession. *Sumlin*, 69 Ohio St.3d at 109, 630 N.E.2d 681. Likewise, the fact that Bach confessed virtually on the eve of trial while refusing to swear to the veracity of the confession provides good reason to question the veracity of his

statement. In addition, while Mrs. Durant's trial testimony provides some corroboration for the confession, she curiously never told the police or anyone in the months after her husband's arrest that Bach actually had sold the drugs to Riley. Although not dispositive, we also find it relevant that Bach himself told police that Durant had handed him the money while the two men were in their pickup truck. This statement conflicts with Durant's suggestion that Bach had the money because he was the one who sold the drugs to Riley. Having examined the record in this case, we simply find no abuse of discretion in the trial court's determination that corroborating circumstances did not clearly indicate the trustworthiness of Bach's confession. Accordingly, we overrule Durant's first assignment of error.

{¶ 29} In his second assignment of error, Durant claims that the trial court erred by preventing him from cross-examining Randy Riley about the existence of pending criminal charges against him. Durant argues that such questioning was proper because the existence of pending charges would reasonably tend to show that Riley's testimony may have been tainted by self-interest, bias, or a motive to testify falsely.

{¶ 30} The state presents a twofold argument in response. First, it notes the absence of evidence demonstrating that Riley actually had criminal charges pending against him in Montgomery County. Without such evidence, the state reasons, Durant cannot demonstrate error in the trial court's decision to disallow cross-examination on the topic. Second, the state insists that Durant suffered no prejudice from the trial court's ruling because the jury heard Riley testify, knew that he had "worked off" at least one prior charge, and was aware that he had then become a paid informant. The state claims that these facts sufficiently revealed that Riley "may have been influenced by his own bias or interest in preserving a working relationship with law enforcement officials."

{¶ 31} Upon review, we find Durant's second assignment of error to be persuasive. "While ordinarily the credibility of a witness may be attacked by proof of conviction of crime, but not by proof of indictment, this rule is subject to the exception that a witness in a criminal case may be asked if he is under indictment for crime, if such fact would reasonably tend to show that his testimony might be influenced by interest, bias, or a motive to testify falsely." *State v. Hector* (1969), 19 Ohio St.2d 167, 178, 48 O.O.2d 199, 249 N.E.2d 912.

{¶ 32} In *Hector*, the Ohio Supreme Court concluded that evidence of criminal charges "then pending in the same court against a witness for the prosecution is a circumstance tending to show that the testimony of the witness is or may be influenced by the expectation or hope that, by aiding in the conviction of the defendant, he might be granted immunity or rewarded by leniency in the disposition of his own case." Id. at 178–179, 48 O.O.2d 199, 249 N.E.2d 912.

{¶ 33} In the present case, Durant's attorney attempted to cross-examine Riley about the existence of two pending drug charges. Before she could finish the question, the assistant prosecutor objected. The trial court sustained the objection, presumably because the question pertained to pending charges rather than prior convictions. If there were pending drug charges against Riley in Montgomery County, however, that fact reasonably might tend to show bias or self-interest on his part to give testimony favorable to the state, regardless of whether the state made any specific deal with Riley in exchange for the testimony. As the Ohio Supreme Court noted in *Hector*, pending charges against a witness tend to show that his testimony may be influenced by the expectation *or hope* of leniency from the state. 19 Ohio St.2d at 178, 48 O.O.2d 199, 249 N.E.2d 912. Thus, we believe that defense counsel should have been permitted to inquire about the existence of pending charges against Riley in Montgomery County.

{¶ 34} We also reject the state's argument that the absence of evidence demonstrating that Riley actually had criminal charges pending against him in Montgomery County is fatal to Durant's claim. Evid.R. 616(A) provides that "any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence." By sustaining the state's objection to defense counsel's question, the trial court precluded an inquiry of the witness and, in so doing, deprived Durant of a substantial right by requiring foundational proof through extrinsic evidence. "Counsel often cannot know in advance what pertinent facts may be elicited on cross-examination. For that reason it is necessarily exploratory * * *. Prejudice ensues from *a denial of the opportunity* to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial." (Citations omitted; emphasis added.) *Alford v. United States* (1931), 282 U.S. 687, 692, 51 S.Ct. 218, 75 L.Ed. 624.

{¶ 35} The Ohio Supreme Court's ruling in *Hector* is consistent with the foregoing principles. In *Hector*, defense counsel inquired on cross-examination whether a prosecution witness was under indictment for various crimes. The state objected, and the trial court sustained the objection. *Hector*, 19 Ohio St.2d at 173–174, 48 O.O.2d 199, 249 N.E.2d 912. Nothing in the Ohio Supreme Court's opinion establishes that the witness actually was under indictment. Nevertheless, the justices unanimously concluded that defense counsel was entitled to ask whether the witness was under indictment. The *Hector* court also held that the deprivation of this right to inquire into the issue on cross-examination constituted reversible error. Id. at 178–179, 48 O.O.2d 199, 249 N.E.2d 912. Thus, we find

no merit in the state's assertion that Durant's claim must fail because the record lacks affirmative evidence of any pending indictments against Riley.

{¶ 36} We also reject the state's claim that the error in precluding cross-examination on the issue was harmless. The state insists that Durant suffered no prejudice from the trial court's ruling because the jury heard Riley testify, knew that he had "worked off" at least one prior charge, and was aware that he had then become a paid informant. We disagree. The mere fact that defense counsel was able to impeach Riley in other ways does not mean that Durant was not prejudiced by counsel's inability to cross-examine Riley about pending indictments. The existence of pending indictments may provide a compelling reason for a witness to give biased or untruthful testimony.

{¶ 37} We cannot say that the trial court's error in refusing to allow cross-examination into this independent basis for impeachment was harmless beyond a reasonable doubt. Riley was the *sole* prosecution witness who observed the drug transactions underlying Durant's convictions. Given his key role in the state's case and his already questionable credibility due to his status as a crack user who served as a paid police informant, we cannot say with any certainty that the jury's guilty verdicts would have been the same if defense counsel had been allowed to cross-examine Riley about pending indictments. Accordingly, we sustain Durant's second assignment of error.

{¶ 38} In his third assignment of error, Durant argues that even if the errors he has alleged above were harmless individually, their cumulative effect resulted in an unfair trial. It is true that separately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. *Madrigal,* 87 Ohio St.3d at 397, 721 N.E.2d 52. In order to find cumulative error, we first must find that multiple errors were committed at trial. Id. at 398, 721 N.E.2d 52. We then must find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors. *State v. Thomas* (Sept. 21, 2001), Clark App. No. 2000-CA-43, 2001 WL 1103328. In our review of Durant's first two assignments of error, however, we found only one error committed by the trial court. Given that no multiple errors exist, we overrule Durant's third assignment of error.

### III. Conclusion

{¶ 39} Having sustained Durant's second assignment of error, we reverse the judgment of the Montgomery County Common Pleas Court and remand the cause for further proceedings.

Judgment reversed
and cause remanded.

BROGAN and GRADY, JJ., concur.