[Cite as *State v. Rafferty*, 2013-Ohio-1585.]

IN THE COURT OF APPEALS FOR CHAMPAIGN COUNTY, OHIO

STATE OF OHIO                                          :

     Plaintiff-Appellee                         :                    C.A. CASE NO.   2012 CA 15

v.                                                            :                    T.C. NO.     11CR220

STEVEN P. RAFFERTY                             :                     (Criminal appeal from
                                                                                 Common Pleas Court)

     Defendant-Appellant                      :

                                                              :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    19th    day of     April    , 2013.

. . . . . . . . . .

KEVIN S. TALEBI, Atty. Reg. No. 0069198, Champaign County Prosecutor, 200 N. Main Street, Urbana, Ohio 43078
     Attorney for Plaintiff-Appellee

MONTE K. SNYDER, Atty. Reg. No. 0005213, 6501 Germantown Rd., Lot 41, Middletown, Ohio 45042
     Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

     **{¶ 1}** Steven P. Rafferty was convicted by a jury of aggravated robbery

(with specifications) and theft. The charges stemmed from the robbery of the Zoom Zoom Drive Thru in Mechanicsburg, Ohio, on August 15, 2011. The counts and specifications were merged as allied offenses of similar import, and Rafferty was sentenced to ten years in prison for aggravated robbery, to be served consecutively to a mandatory three-year term for a firearm specification. The trial court imposed a $200 fine, restitution of $763 (half of which was to be paid by Rafferty's co-defendant), and court costs (including legal fees).

{¶ 2} Rafferty appeals from his conviction. His sole assignment of error states:

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT IN NOT APPLYING EVIDENCE RULE 804(B)(3) IN DETERMINING THE ADMISSIBILITY OF TESTIMONY OF A DEFENSE WITNESS PROFFERED BY THE DEFENDANT. THIS DENIAL IMPAIRED THE PRESENTATION OF THE DEFENSE TO SUCH AN EXTENT THAT THE DEFENDANT WAS DEPRIVED OF A FUNDAMENTALLY FAIR TRIAL.

{¶ 3} In his assignment of error, Rafferty claims that the trial court erred in denying his request to allow a witness to testify regarding statements made by Denvil Rose, Rafferty's co-defendant, while Rose and the prospective defense witness shared a holding cell in the courthouse.

{¶ 4} After the jury left the courtroom for lunch on the second day of trial, the State told the court that it was resting. At this time, Rafferty indicated that he intended to call as defense witnesses Rose and two individuals who were housed in the Tri-County Jail, James McCarty and Edward Shoffner. The prosecutor responded that he expected to object

to the testimony of McCarty and Shoffner as hearsay, because their testimony would consist of statements made by Rose and Rose's statements were not admissible as statements of a co-conspirator made in furtherance of and in the course of the conspiracy.

{¶ 5}     After the lunch break but before the jury was brought into the courtroom, the court asked defense counsel what he expected the content of McCarty's and Shoffner's testimony to be.   Counsel responded:

* * * These two individuals, Your Honor, I initially expected to testify of overhearing a conversation when they shared a holding cell with Co-defendant Rose in the courthouse earlier, I guess it would have been last year, perhaps, earlier this year.   I think it was last year, though.

The conversation would have been such that Mr. Rose had admitted that he had committed the crime in question with another individual, not Mr. Rafferty.   That Mr. Rafferty had nothing to do with it.

Initially, I thought that was going to be the testimony of both Mr. McCarty and Mr. Shoffner.   During the lunch break, I went down to speak to Mr. McCarty and Mr. Shoffner.   I believe I would be misleading the Court to say that's what I anticipated [sic] both of their testimony to be now.

I believe Mr. McCarty would say something along the lines of he overheard Mr. Rose state that he was going to get blamed for it, but there was actually no admission as to guilt from Mr. Rose.

Mr. Shoffner, though, is standing by the original thing that he told me, that indeed he has some exculpatory testimony or exculpatory to Mr. Rose

that would help Mr. Rafferty. That is why I am asking the Court to allow me to let these individuals testify. And if the Court is unwilling to do so, I would ask that what I just stated be proffered as evidence. Thank you.

Defense counsel subsequently indicated that, based on McCarty's most recent statement of his anticipated testimony, McCarty would no longer be called as a defense witness, but that he still wanted to call Shoffner.

{¶ 6} The State objected to testimony regarding any statements made by Rose to others at the jail. It argued that the statements did not fall within Evid.R. 801(D)(2)(e), which excludes from the hearsay rule statements made by a co-defendant in the course of and in furtherance of the conspiracy. The State asserted that Rose's statement to Shoffner was made after the conspiracy had ended and did not fall within the rule.

{¶ 7} The trial court ruled that Shoffner's testimony would not be admitted, stating that it "believes that statement is hearsay, and it doesn't fall under any of the exceptions to hearsay. It doesn't fall under the definition of non hearsay." The trial court further stated that it "believes that the testimony of the Witness Shoffner does not satisfy the requirements of extrinsic testimony for such people for self-contradiction under Rule 613, but the Court takes the position that Counsel for Defendant can inquire on cross-examination of Mr. Rose about previous statements."

{¶ 8} Rose was questioned, outside the presence of the jury, due to the expectation that he would invoke his Fifth Amendment right to remain silent. Defense counsel asked Rose whether he was involved in the robbery of the Zoom Zoom Drive Thru on August 15, 2011, whether he had admitted in a courthouse holding cell that he was happy

that Rafferty "was taking the fall for this" and that a friend other than Rafferty had actually committed the crime, and whether he had said that Rafferty "had nothing to do with this robbery." Rose invoked his Fifth Amendment rights in refusing to answer each of these questions.

{¶ 9} The proceedings then continued in front of the jury. Defense counsel called Rafferty to testify on his own behalf. He was the only defense witness. Rafferty did not attempt to call Shoffner as a witness or ask the court to reconsider its ruling that Shoffner's testimony was hearsay and did not meet any exception to the hearsay rule.

{¶ 10} On appeal, Rafferty claims that, once Rose exercised his Fifth Amendment rights, Rose's out-of-court statements to Shoffner were admissible under Evid.R. 804(B)(3), which provides:

Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: * * *

(3) Statement against interest. A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

{¶ 11} Rafferty argues that each of the requirements for the admission of Rose's statements under Evid.R. 804(B)(3) was met. First, he asserts that, once Rose invoked his right to silence, he was unavailable to testify as a witness. Second, he states that Rose admitted to Shoffner that he (Rose) committed the robbery, a statement that was "clearly against his penal interest." Finally, Rafferty asserts that the circumstances of Rose's statement to Shoffner made it reliable. He also contends that the trial court's failure to address Evid.R. 804(B)(3) after Rose invoked his Fifth Amendment rights precluded him from establishing the reliability or trustworthiness of Rose's statements.

{¶ 12} The State responds that the trial court implicitly rejected the admissibility of Rose's statements under Evid.R. 804(B)(3) when it found the statements were hearsay and did not meet an exception to the hearsay rule. The State further argues that Rafferty did not raise Evid.R. 804(B)(3) after Rose invoked his right to remain silent, and the doctrine of invited error precludes him from raising the trial court's ruling (or lack thereof) on appeal.

{¶ 13} We agree with the State that Rafferty did not preserve this issue for appeal. At the time the court originally disallowed Shoffner's testimony of Rose's statements, it had not been established that Rose was unavailable to testify (i.e., that he would invoke his right to silence under the Fifth Amendment).[1] Once Rose invoked his right to silence, Rafferty

---

[1] Rafferty does not argue that the trial court erred in ruling, prior to Rose's invocation of his Fifth Amendment rights, that Rose's statements were inadmissible, and we also conclude that Rose's statement did not fall under Evid.R. 801(D)(2)(e) as "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy." Evid.R. 801(D)(2)(e). In general, a co-conspirator's statements to a third party which simply describe the events that occurred are not made in furtherance of the conspiracy. *See State v. Braun*, 8th Dist. Cuyahoga No. 91131, 2009-Ohio-4875, ¶ 113 (statements of co-conspirator who bragged about

did not ask the trial court to allow Shoffner's testimony under Evid.R. 804(B)(3), and he did not attempt to call Shoffner as a witness. Rafferty, therefore, has waived all but plain error.

{¶ 14} Even if Rafferty had properly preserved the issue for appeal, we would find no fault with the exclusion of Shoffner's testimony. Rafferty's proffer of Shoffner's testimony indicated that Shoffner would testify that Rose, Rafferty's co-defendant, had implicated someone other than Rafferty as his accomplice. Rose's statement was made in a courthouse holding cell after charges had been brought against both Rafferty and Rose for the robbery of the Zoom Zoom Drive Thru.

{¶ 15} Once Rose invoked his right against self-incrimination, Rose's statement would have been admissible if it met the three requirements of Evid.R. 804(B)(3). A declarant who asserts his Fifth Amendment rights is considered unavailable for purposes of Evid.R. 804(B)(3). *State v. Sumlin*, 69 Ohio St.3d 105, 108, 630 N.E.2d 681 (1994).

{¶ 16} Rose's statement that he committed the robbery certainly exposed Rose to criminal liability. However, this does not mean that Rose's entire statement is admissible under Evid.R. 804(B)(3). As stated by the Fifth District:

Evid.R. 804(B)(3) provides for the admission of statements against interest because it is assumed no reasonable person would fabricate self-incriminating

---

the murder were not made in furtherance of the conspiracy); *State v. Smith*, 87 Ohio St.3d 421, 721 N.E.2d 93 (2000). And although a conspiracy does not necessarily end with the commission of the crime, the conspiracy typically has ended once the perpetrators are apprehended. Rose's statement to Shoffner, which was made in a courthouse holding cell after he and Rafferty were apprehended, was not made during the course and in furtherance of the conspiracy. Accordingly, the trial court correctly determined that Rose's statements were hearsay, and we find no exception to the hearsay rule that would have allowed their admission.

remarks. While it may be unlikely a reasonable person would fabricate statements which implicate himself in a crime, it may be likely a reasonable person would fabricate statements neutral to his position and inculpatory of another. This is especially true in the case of a co-defendant, who often has an incentive to fabricate facts which are inculpatory of another. Because the rationale behind the admission of statements against interest does not support the admission of those portions of the statement which are neutral to the declarant and/or inculpatory of another, we find such portions are inadmissible under Evid.R. 804(B)(3) and should be redacted prior to the admission of the inculpatory statement.

*State v. Stapleton*, 5th Dist. Perry No. 97CA62, 1998 WL 666774, *4 (Aug. 31, 1998). *See also Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994).

{¶ 17} We have made similar remarks. For example, in *State v. Sinkfield*, 2d Dist. Montgomery No. 17690, 2000 WL 543320 (May 5, 2000), Sinkfield and Jeffrey Stevens were charged with numerous felonies, including the murder of Billy Vance. At Sinkfield's trial, he called a witness to testify that "he [the witness] received a telephone call from Stevens during which Stevens confessed to having just killed Vance with Henry Watson." We commented on that testimony, stating: "Under Evid.R. 804(B)(3), Stevens' confession to the murder was probably admissible as a statement against interest. That portion of his statement inculpating Henry Watson, however, was not against Stevens' own penal interest, and was therefore not admissible under that exception to the hearsay rule." *Id.* at *2, fn. 1. *Contrast State v. Newsome*, 3d Dist. Putnam No. 12-12-03, 2012-Ohio-6119, ¶ 37. Thus,

the portion of Rose's statement indicating that an individual other than Rafferty committed the robbery with him was not against Rose's penal interest and did not fall under Evid.R. 804(B)(3).

{¶ 18} Moreover, based on the record before us, we cannot conclude that corroborating circumstances clearly indicated the trustworthiness of Rose's statement. Rose's statement was made in a holding cell at the courthouse prior to a court hearing. There is no indication that Rose had any prior relationship with Shoffner, such that Rose would be more likely to confide truthfully in him. Rose's statement did not include any details of the crime, which might have demonstrated its truthfulness. In addition, Rafferty's counsel indicated to the trial court that he had spoken with Shoffner and McCarty during the lunch break, and McCarty would no longer testify that he heard Rose incriminate himself. Instead, McCarty's testimony, if offered, would have been that he overheard Rose say that he was going to get blamed for the robbery. With these circumstances, we cannot conclude that there were sufficient corroborating circumstances indicating the trustworthiness of Rose's statement.

{¶ 19}　　Rafferty's assignment of error is overruled.

{¶ 20}　　The trial court's judgment will be affirmed.

. . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies mailed to:

Kevin S. Talebi
Monte K. Snyder
Hon. Nick A. Selvaggio