OPINION
{¶ 1} Michael A. Henderson, defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court, upon remand pursuant to In re Ohio Criminal Sentencing StatutesCases, 109 Ohio St.3d 313, 2006-Ohio-2109, and under the authority ofState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, resentenced appellant to a term of incarceration.
 {¶ 2} Although more specific details underlying the crimes in the present case will be discussed as necessary under appellant's assignments of error, the general facts and procedural circumstances are as follows, as drawn from our prior decision in State v. Henderson, Franklin App. No. 04AP-1212, 2005-Ohio-4970. In the summer of 2002, A.B. and appellant began dating. In August 2002, A.B. discovered she was pregnant, and the couple agreed that A.B. would not get an abortion. On the evening of October 1, 2002, appellant arrived at A.B.'s apartment, and the two began to argue about A.B.'s pregnancy. After trying to initiate sex with A.B., appellant left the apartment. Another argument ensued during a telephone call, and appellant arrived back at the apartment around 10:30 p.m. to collect his personal belongings at A.B.'s request. While there, appellant punched A.B. in the eye, threw the telephone when she tried to use it, and then tackled A.B. when she ran to the bedroom window for help. Appellant held her to the floor, and, after a 15 to 20 minute struggle, appellant ripped off A.B.'s shorts, forced her legs apart, held her arms back, and proceeded to have vaginal intercourse with her without ejaculating.
 {¶ 3} During the struggle, A.B. bit appellant's nose. Appellant stopped having sex with A.B., and the two talked for some time. Appellant then threatened A.B. with physical assault unless she had sex with him again. A.B. complied with the demand and had sex with appellant until he ejaculated. Thereafter, appellant blocked the door and told A.B. that he was not letting her leave and that they were going to have a lot more sex that night. They then left the bedroom and went into the bathroom. Appellant saw his nose in the mirror and told A.B. that he should kill her, after which A.B. ran out of the apartment, located someone with a cell phone, and called the police.
 {¶ 4} Appellant was charged with one count of kidnapping, in violation of R.C. 2905.01(A)(4), with a sexually violent predator specification pursuant to R.C. 2941.148; two counts of rape, in violation of R.C.2907.02(A)(2); one count of attempted rape, in violation of R.C. 2923.02
and 2907.02; and one count of abduction, in violation of R.C. 2905.02. After a jury trial, appellant was acquitted of attempted rape but found guilty of the other charges. The sexually violent predator specification was tried to the trial court, and the court declared appellant to be a sexually violent predator, as well as a sexual offender. The trial court then sentenced appellant to consecutive eight-year prison terms for each kidnapping and rape charge, while merging the abduction charge with the kidnapping charge for sentencing purposes, for a total of 24 years in prison. The trial court imposed an additional life sentence for appellant's conviction of the sexually violent predator specification.
 {¶ 5} Appellant appealed to this court. In Henderson, supra, among appellant's assignments of error was the argument that the imposition of consecutive sentences based on facts neither found by the jury nor admitted by the defendant violated his right to trial by jury and was in contravention of Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531. However, we affirmed the judgment of the trial court in all respects, with the exception that the trial court erred when it found appellant to be a sexually violent predator. Therefore, we reversed solely with respect to the sexually violent predator specification and remanded the matter for resentencing without that specification. Appellant then appealed to the Ohio Supreme Court, which reversed the trial court's judgment as it pertained to sentencing only, under the authority of Foster, supra. Upon remand, the trial court resentenced appellant to eight years of incarceration on the rape and kidnapping counts, to be served consecutively, for a total of 24 years. Appellant appeals the judgment of the trial court, asserting the following assignments of error:
 [I.] THE SENTENCING ORDER OF THE COURT BELOW VIOLATED APPELLANT'S RIGHTS UNDER THE EX POST FACTO AND DUE PROCESS CLAUSES OF THE UNITED STATES CONSTITUTION.
 [II.] THE SENTENCING ORDER OF THE COURT BELOW VIOLATED APPELLANT'S RIGHTS TO A TRIAL BY JURY GUARANTEED UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.
 [III.] THE SENTENCING ORDER OF THE COURT BELOW WAS CONTRARY TO LAW UNDER THE RULE OF LENITY.
 [IV.] THE RECORD ESTABLISHES THAT THE OFFENSES OF RAPE AND KIDNAPPING WERE ALLIED OFFENSE[S] OF SIMILAR IMPORT COMMITTED WITH A SINGLE ANIMUS (R.C. 2941.25), AND THE TRIAL COURT ERRED IN ENTERING JUDGMENT OF CONVICTION AND SENTENCE ON BOTH.
 {¶ 6} Appellant's first and second assignments of error are related, and will be addressed together. Appellant asserts in these two assignments of error that the trial court's sentencing order was violative of his right against ex post facto laws, due process rights, and right to a trial by jury. Essentially, appellant asserts the retroactive application of Foster, supra, to his sentence is unconstitutional. In Foster, the Ohio Supreme Court held that, under the United States Supreme Court's decisions in Apprendi v. New Jersey
(2000), 530 U.S. 466, 120 S.Ct. 2348, and Blakely, supra, portions of Ohio's sentencing scheme were unconstitutional because they required judicial fact finding before a defendant could be sentenced to more than the minimum sentence, the maximum sentence, and/or consecutive sentences. Id., at paragraph one of the syllabus. As a remedy, the Ohio Supreme Court severed the offending sections from Ohio's sentencing code. Thus, pursuant to Foster, trial courts had full discretion to impose a prison sentence within the statutory range and were no longer required to make findings or give their reasons for imposing maximum, consecutive or more than minimum sentences. Id., at ¶ 100.
 {¶ 7} Appellant argues that the severance remedy instituted inFoster violates his constitutional rights because the severance, in effect, raises the presumptive minimum sentence. Appellant maintains that, pursuant to the sentencing statutes in effect at the time his crimes were committed, there was a presumption of minimum and concurrent terms, and non-maximum sentences. This court recently addressed these issues in State v. Gibson, Franklin App. No. 06AP-509, 2006-Ohio-6899. In Gibson, this court found the retroactive application ofFoster did not violate the right to due process and the ex post facto clause. We determined that we were bound to apply Foster as it was written. Id., at ¶ 15, citing State v. Alexander, Franklin App. No. 06AP-501, 2006-Ohio-6375. We explained that it is unlikely the Ohio Supreme Court would direct inferior courts to violate the constitution, and, in any event, inferior courts are bound by the Ohio Supreme Court directives. Id., citing State v. Grimes, Washington App. No. 04CA17,2006-Ohio-6360; State v. Hildreth, Lorain App. No. 06CA8879,2006-Ohio-5058; and State v. Durbin, Greene App. No. 2005-CA-134,2006-Ohio-5125. We further reasoned in Gibson that, because criminal defendants were aware of the potential sentences at the time they committed their crimes, and because the remedial holding ofFoster was not unexpected, Foster did not violate due process notions. Id., at ¶ 16, citing State v. McGhee, Shelby App. No. 17-06-05,2006-Ohio-5162. We also noted that the Fifth District Court in State v.Paynter, Muskingum App. No. CT2006-0034, 2006-Ohio-5542, observed that several federal circuit courts have addressed these issues in relation to the United States Supreme Court's decision in State v. Booker (2005),543 U.S. 220, 125 S.Ct. 738, and rejected similar arguments regarding ex post facto and due process violations. Id., citing Paynter, at ¶ 42.
 {¶ 8} In the present case, like the defendant in Gibson, appellant knew the statutory range of punishments at the time he committed the offenses for which he was convicted. The statutory range of punishments has not changed in light of Foster. Thus, Foster did not judicially increase appellant's sentence, and it did not retroactively apply a new statutory term to an earlier committed crime. Further, " `at the time that appellant committed his crimes the law did not afford him an irrebuttable presumption of minimum and concurrent sentences.'" Id., at ¶ 18, citing Alexander, at ¶ 8. Therefore, we conclude that the remedial holding of Foster does not violate appellant's constitutional rights. For these reasons, and, based upon our rationale in Gibson, we overrule appellant's first and second assignments of error.
 {¶ 9} Appellant argues in his third assignment of error that the trial court's sentence violated the rule of lenity. The rule of lenity is a principle of statutory construction that provides that a court will not interpret a criminal statute so as to increase the penalty it imposes on a defendant where the intended scope of the statute is ambiguous.Moskal v. United States (1990), 498 U.S. 103, 107-108, 111 S.Ct. 461. Under the rule, ambiguity in criminal statutes is construed strictly so as to apply only to conduct that is clearly prescribed. United States v.Lanier (1997), 520 U.S. 259, 266, 117 S.Ct. 1219. The rule of lenity has been codified in R.C. 2901.04(A), which provides, in pertinent part: "(A) Except as otherwise provided in division (C) or (D) of this section, sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused."
 {¶ 10} Here, appellant specifically claims that the remedy crafted inFoster, by which the judicially reconstructed statutory provisions are to be retroactively applied to pre-Foster prosecutions on remand, violates the rule of lenity by imposing the least lenient construction of the sentencing statute on a defendant being resentenced. However, the rule of lenity applies only where there is an ambiguity in a statute or conflict between multiple statutes. See Lanier, at 266. There exists no ambiguity in the sentencing statutes in Ohio because the Ohio Supreme Court held that portions of Ohio's felony sentencing framework were unconstitutional in Foster. See State v. Moore, Allen App. No. 1-06-51,2006-Ohio-6860, at ¶ 12. See, also, State v. Elswick, Lake App. No. 2006-L-075, 2006-Ohio-7011, at ¶ 43 (because R.C. 2929.14[B] is not ambiguous, the rule of lenity does not apply); State v. Green, Ashtabula App. No. 2005-A-0069, 2006-Ohio-6695, at ¶ 24 (the principle of lenity applies to the construction of ambiguous statutes, not to determinations of a statute's constitutionality or to the law regarding the retroactive effect of Ohio Supreme Court decisions). Therefore, the rule of lenity is not applicable to the circumstances in the present case, as appellant points out no ambiguity in the sentencing statutes, and Foster clearly and unambiguously severed the unconstitutional portions of the pertinent sentencing statutes. See Moore, supra (the rule of lenity has no bearing since Foster clearly and unambiguously severed the unconstitutional portions of these sentencing statutes). See, also, State v. Corbin, Allen App. No. 1-06-23, 2006-Ohio-6092, at ¶ 13 (the rule of lenity is not applicable because Foster can be easily understood to state that portions of the sentencing framework are unconstitutional and provide no ambiguity as to the unconstitutionality of certain statutes). For these reasons, appellant's third assignment of error is overruled.
 {¶ 11} Appellant argues in his fourth assignment of error that the trial court erred when it sentenced him both on the rape and kidnapping counts because the rape and kidnapping offenses were allied offenses of similar import committed with a single animus. In Henderson, supra, we addressed this same issue, under a plain error analysis, and determined that the kidnapping offense did not merge with the rape offense for purposes of sentencing. In the present case, the state argues that, because we already addressed this issue in the prior appeal, appellant's argument on this issue after the remand, pursuant to Foster, is barred by res judicata and the law of the case doctrine. Appellant counters that, because we addressed the issue only under the plain error analysis, and he raised the same argument again on the remand, pursuant to Foster, he is now entitled to a full review of the issue before this court.
 {¶ 12} However, even if we were to address the merger issue again in the present case, we would concur with our prior determination inHenderson. R.C. 2941.25 provides, in pertinent part:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
 {¶ 13} Rape, in violation of R.C. 2907.02(A)(2), and kidnapping, in violation of R.C. 2905.01(A)(4), are allied offenses of similar import. See State v. Donald (1979), 57 Ohio St.2d 73, syllabus. Thus, appellant could only be convicted of both offenses if the crimes were committed separately or with a separate animus. In State v. Logan (1979),60 Ohio St.2d 126, the Ohio Supreme Court established guidelines to determine whether kidnapping and rape are committed with a separate animus so as to permit separate punishment under R.C. 2941.25(B). In Logan, the court held that:
 Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions[.]
Id., at subparagraph (a) of the syllabus.
 {¶ 14} A.B. testified as follows. On the night of the incident, appellant and A.B. got into an argument after appellant told her he had scheduled an abortion for her. Appellant left the residence at about 9:30 p.m. or 9:45 p.m., but returned at 10:30 p.m., by which time A.B. had gone to bed. Appellant started gathering his personal belongings to leave the residence, and A.B. went to her computer desk in the family room to make certain he did not take any of her belongings. Appellant then hit A.B. in the face. When A.B. retrieved the telephone to dial 911, appellant grabbed her around her body, took the phone, and threw it. She decided to try to escape through a window, so she ran to her bedroom and screamed out the window. Appellant tackled her and dragged her to the floor. He pushed her face into the carpet so she could not scream. Appellant then told her No. 06AP-645 10 to quit screaming, but she did not. He kept holding her down, holding her arms and hands over her face. After 15 or 20 minutes, she realized that she was going to have to be quiet so he would let her breathe.
 {¶ 15} A.B. further testified that appellant then flipped her over onto her back and said he wanted to "f**k" her. She tried to talk him out of it, but he tore off her boxer shorts. She kept her knees together and tried to kick him. Holding her arms back and her legs apart, he put his penis in her vagina. A.B. then bit his nose. The two then talked for about 15 minutes, and appellant started crying. Suddenly, appellant got angry again and said he was not going to leave until he "f**ked" her and was "coming" tonight. He said it was going to "be a while." He then put her on the bed. Because he was threatening her life and the lives of her family, she gave in, and he had vaginal intercourse with her. Afterward, she said she needed a drink of water, but appellant stood in front of the door and stated he was not going to let her leave and that he was "coming a lot more tonight." He then allowed her to get a drink of water. While she was getting water, appellant saw his nose in the mirror and stated he should kill her. A.B. then returned to the bathroom momentarily, and, while he looked at himself in the mirror, A.B. ran out of the residence through the front door.
 {¶ 16} We concur in our prior appraisal of the situation inHenderson, at ¶ 35. A.B.'s testimony clearly indicated appellant restrained her before he began to rape her, and the restraint was prolonged. A.B.'s testimony did not suggest that the initial restraint was for the purpose of committing the sexual offense. Appellant restrained her because she was attempting to call 911 after appellant hit her in the face. Appellant restrained her again when she decided to try to scream out the bedroom window. He tackled her and buried her face in the carpet so she could not scream. Appellant held her body down and put her arms and hands over her face for 15 to 20 minutes. These confinements were independent of his decision to commit the later act of rape and were not merely incidental to the sexual offenses. These restraints were also temporally substantial and not for a limited period only to permit sexual conduct to occur. Accordingly, we find the kidnapping and rape offenses were committed with a separate animus, and the trial court did not err when it failed to merge the kidnapping offense with the rape offenses. Appellant's fourth assignment of error is overruled.
 {¶ 17} Accordingly, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
SADLER, P.J., concurs. WHITESIDE, J., concurs in part and dissents in part.