The STATE of Ohio, Appellee,

v.

SWANN, Appellant.

[Cite as *State v. Swann*, 171 Ohio App.3d 304, 2007-Ohio-2010.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 06AP–870 and 06AP–899.

Decided April 26, 2007.

Ron O'Brien, Franklin County Prosecuting Attorney, and Seth L. Gilbert, Assistant Prosecuting Attorney, for appellee.

Dianne Worthington, for appellant.

TYACK, Judge.

{¶ 1} Christopher Swann ("appellant" or "Swann") appeals from his conviction of felonious assault with a firearm specification and the resulting sentence of nine years incarceration. For the reasons set forth below, we reverse.

{¶ 2} On the evening of June 25, 2005, John "Cash" Stith was shot outside his grandmother's house on the south side of Columbus, Ohio. Stith, who was not fatally wounded, identified his assailant as Christopher Swann, whom Stith and others in the neighborhood refer to as "Kurt," or "C." Stith and Swann had known each other for about seven years, and prior to the shooting, Stith considered Swann a friend.

{¶ 3} Swann maintained his innocence, and, at his trial, he presented alibi testimony from four witnesses to demonstrate that he was not Stith's shooter. Additionally, Swann proffered testimony and other evidence that another neigh-

borhood man, Delmar "Marty" Carlisle, had confessed to the shooting. Carlisle's alleged confession was corroborated by at least four other nearby residents. The trial judge excluded Carlisle's statements from being admitted into evidence and from the hearing of the jury on the basis that the statements did not meet the requirements of the hearsay exception in Evid.R. 804(B)(3).

{¶ 4} In this appeal, Swann raises four assignments of error. The trial judge's exclusion of statements alleging third-party guilt is appellant's first assignment of error:

The trial court erred by preventing appellant from introducing testimony concerning Delmar Carlisle's confessions to committing the offense.

{¶ 5} Swann raises as error the trial judge's systematic exclusion of testimony and evidence relating to statements by Carlisle, who had allegedly confessed to the crime for which Swann was charged. We review the record in accordance with Crim.R. 52(A), which governs criminal appeals of nonforfeited error. See, e.g., *Columbus v. Dials*, Franklin App. No. 04AP–1099, 2006-Ohio-227, 2006 WL 164420, at ¶ 19; *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, at ¶ 7. Crim.R. 52(A) provides a two-prong test that must be satisfied before we may correct an alleged error: first, we determine whether there was an error—i.e., a "[d]eviation from a legal rule." *United States v. Olano* (1993), 507 U.S. 725, 732–733, 113 S.Ct. 1770, 123 L.Ed.2d 508. Second, if we find error, we examine the error in the context of the trial court record to determine whether the error affected a substantial right of the accused. A criminal defendant's substantial rights are affected when the occurring error was prejudicial to the extent that the error altered the outcome of the trial court proceedings. Id. at 734, 113 S.Ct. 1770, 123 L.Ed.2d 508.

{¶ 6} Evid.R. 804(B) provides:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: [1]

* * *

*(3) Statement against interest.* A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to

---

1. Evid.R. 804(A) defines "unavailability" for the purposes of section B. The trial judge determined that the witness was unavailable for the purposes of the hearsay exception, but excluded the testimony based on lack of corroboration. Thus, we do not need to address whether Carlisle was, in fact, unavailable.

criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

The Ohio Rules of Evidence are intended to foster a fair presentation of the evidence and to protect the right of an accused to due process of law under the Fourteenth Amendment to the United States Constitution. See, also, Section 5(B), Article IV, Ohio Constitution. The rules of evidence, whether state or federal, were not intended to deprive a criminal defendant of a fair opportunity to present a defense. See, e.g., *Holmes v. South Carolina* (2006), 547 U.S. 319, 126 S.Ct. 1727, 1731, 164 L.Ed.2d 503; *Crane v. Kentucky* (1986), 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636; *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, at ¶ 69.

{¶ 7} Shortly before Swann's trial, the United States Supreme Court decided *Holmes,* which underscored the trial court's paramount duty owed to a criminal defendant:

> "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"

Id. 547 U.S. 319, 126 S.Ct. at 1728, 164 L.Ed.2d 503, quoting *Crane v. Kentucky,* 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636. In *Holmes,* the United States Supreme Court vacated a state supreme court interpretation of a state evidentiary rule that precluded the accused from offering statements alleging third-party guilt because the statements were contrary to the prosecution's forensic evidence, which implicated the defendant. Id. 547 U.S. 319, 126 S.Ct. at 1730–1731, 164 L.Ed.2d 503. The *Holmes* court concluded that such a construction of the rule ignored the probative value of the proffered evidence and discounted the factfinder's role in weighing the credibility of witnesses. Id. 547 U.S. 319, 126 S.Ct. at 1733–1734, 164 L.Ed.2d 503. Instead of performing an independent examination of all the evidence in the case, the *Holmes* court found that the lower court's inquiry focused only on the strength of the prosecution's case—if the prosecution's case is strong enough, evidence of third-party guilt is per se excluded, even if that evidence would have great probative value when viewed independently of the conflicting evidence, and even if it prevented the defendant from his constitutional right to present a fair defense. Id. 547 U.S. 319, 126 S.Ct. at 1734, 164 L.Ed.2d 503. Holmes was on trial for rape and murder, which ultimately resulted in his conviction and sentence to death, despite the fact that Holmes offered witnesses who would have testified that they saw another man in the area near the time of the attack and that this other man had made statements implicating himself in the murder.

{¶ 8} Fortunately, John Stith did not die from his wounds. Notwithstanding that fact, the similarities between this case and *Holmes* are striking. The trial judge excluded Carlisle's statements on the basis that the defense did not present sufficient corroboratory circumstances to indicate the trustworthiness of those statements under Evid.R. 804(B)(3). Interestingly, Ohio's Evid.R. 803(B)(3) differs from its federal rule counterpart only insofar as it imposes this additional corroboration requirement. Weissenberger, Ohio Evidence (2005) 421. Cf. Fed.R.Evid.804(b)(3). Stith was always convinced that Swann was his assailant; however, Stith testified that he did not see a weapon in Swann's hand at the time of the shooting. Stith and prosecution witness Kavar Thompson also stated that there were two men who perpetrated the attack. Stith testified that Swann was standing near a large bush when the shooting occurred and that he heard a voice he recognized as Swann's shout an expletive at him. It was dark when the shooting occurred, and Stith made his identification of Swann based solely on his recollection of Swann's voice.

{¶ 9} Thompson and Stith both testified that Carlisle and another man, Andre "Dre" Sharp, were frequently in Swann's company. Carlisle told others that he had been standing behind the bush and that he had done the actual shooting. Carlisle claimed that he was angry with Stith because Stith had had sexual intercourse with Carlisle's girlfriend when she was already pregnant with Carlisle's child.

{¶ 10} Swann also presented four witnesses who claimed that Swann was at a nearby house playing cards and socializing at the time the shooting took place.

{¶ 11} The defense subpoenaed Carlisle, but during voir dire of the witness, Carlisle's court-appointed attorney advised him not to answer any questions relating to Stith, Swann, the witnesses to whom he allegedly confessed to the shooting, or anything else tangential to the night of the shooting. The trial judge, correctly, did not allow Carlisle to take the stand before the jury simply to have him invoke the Fifth Amendment each time he was asked questions relevant to the shooting. The defense fully proffered the testimony of four witnesses who were prevented from testifying about the numerous statements Carlisle was claimed to have made about being the shooter, and the trial judge did permit cross-examination of the witnesses being proffered. The proffered witnesses were friends of both Carlisle and Swann.

{¶ 12} We find that the trial court's exclusion of the defense's evidence essentially allowed them to present only half of their case—the alibi portion. The second half—that a third party, who had motive to shoot John Stith, made statements claiming responsibility for the shooting—was kept entirely from the jury. In light of *Holmes*, we hold that Evid.R. 804(B)(3) cannot be construed in a way that denies an accused a meaningful opportunity to present a complete

defense. See *Holmes*, 547 U.S. 319, 126 S.Ct. at 1733, 164 L.Ed.2d 503. "The accused may introduce any legal evidence tending to prove that another person may have committed the crime with which the defendant is charged." Id. citing 40A American Jurisprudence 2d (2007) 136–138, Homicide, Section 286. The court further held that this evidence alleging third-party guilt was crucial to the defendant's constitutional right to a fair trial and that it could be excluded only under circumstances where the evidence is "speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial." Id. In this case, the trial court should have allowed the proffered testimony and evidence to be presented to the jury for its own consideration. Thus, the trial court erred by denying Swann a meaningful opportunity to present a complete defense.

{¶ 13} Under Crim.R. 52(A), we find the trial court's error to have affected a substantial right of the accused. Appellant's first assignment of error is sustained.

{¶ 14} Appellant's second of assignment of error:

The trial court erred by preventing appellant from cross-examining John Stith about pending criminal charges, and Kevar [*sic*] Thompson regarding possible judicial release.

{¶ 15} In his second assignment of error, Swann argues that the trial court erred in limiting the cross-examination of the state's two principle witnesses—John Stith, the victim, and Kavar Thompson. We find that no error occurred with respect to Stith, and we do not rule on appellant's assignment of error with respect to the cross-examination of Kavar Thompson in light of our ruling on the first assignment of error.

 {¶ 16} At the time of Swann's trial, Stith had felony charges pending against him. Defense counsel argued that the scope of Stith's cross-examination should include reference to the fact that charges were pending because those charges tended to show the witness's bias toward the state.

 {¶ 17} Evid.R. 608 and 609 govern the admissibility of a witness's character as evidence, and impeachment of a witness using evidence of a prior conviction. Neither rule applies here, because with respect to Evid.R. 608, the witness's character may not be attacked on cross-examination unless first offered on direct; moreover, Evid.R. 609 only applies to prior convictions—i.e., not current or pending charges. See, generally, *State v. Brooks* (1996), 75 Ohio St.3d 148, 151, 661 N.E.2d 1030; but cf. *State v. Hector* (1969), 19 Ohio St.2d 167, 178, 48 O.O.2d 199, 249 N.E.2d 912.

{¶ 18} Under Ohio law, a witness can ordinarily be impeached using "[b]ias, prejudice, interest, or any motive to misrepresent." See Evid.R. 616(A); *Brooks*,

75 Ohio St.3d at 151–152, 661 N.E.2d 1030; see also *State v. Drummond,* 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, at ¶ 107–108. In this case, however, the record demonstrates sufficient indicia of the truthfulness of Stith's trial testimony based on the fact that it was consistent with Stith's prior statements to the police immediately after the shooting. Coupled with the prosecution's vigorous assertions that they made no deals in exchange for Stith's testimony, we are not persuaded that the defense was prejudiced by any alleged bias. Furthermore, if any bias were present as to the victim, the result would have been harmless error. See, e.g., *Drummond; State v. Durant,* 159 Ohio App.3d 208, 2004-Ohio-6224, 823 N.E.2d 506, at ¶ 34. Clearly, Stith was shot and seriously wounded. Stith maintained his belief that Swann was the man who shot him from the night of the shooting long before any deal could have been made with the state in exchange for testimony at Swann's trial.

{¶ 19} The circumstances surrounding Kavar Thompson's testimony, however, were entirely different. Thompson was arrested (on an unrelated matter) shortly after Stith's shooting. At the time of Swann's trial, Thompson was incarcerated at Southeastern Correctional Institution for, inter alia, aggravated burglary. Thompson was to be considered for judicial release, and the Franklin County Prosecutor's Office had promised it would not oppose his placement on community control. The lead detective in Swann's investigation testified that he and one of the assistant prosecutors in the case traveled to the prison where Thompson was locked up and that they interviewed him in preparation for Swann's trial. Thompson asked if his testimony would affect his early release from prison, to which the assistant prosecutor replied: "No," as long as Thompson told "the truth" on the witness stand. The problem this situation presents is that the assistant prosecutor's statement could be easily construed by Thompson to have meant: "Testify the way the state wants me to, and they won't oppose my early release from prison. But, if I say something different, they might think I am lying, and then things will be different."

{¶ 20} Under those circumstances, it is at least arguable that Thompson had a motive to testify in a manner that would please the prosecution. Under Evid.R. 616(A), defense counsel arguably should have been afforded the opportunity to explore the witness's potential bias during cross. See, e.g., *Brooks,* 75 Ohio St.3d at 151–153, 661 N.E.2d 1030; see also *Drummond,* 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038. Again, we do not reach the merits of this part of the assignment of error in light of our ruling on the first assignment of error.

{¶ 21} Appellant's second assignment of error is overruled in part and moot in part.

{¶ 22} Appellant's third assignment of error:

Trial counsel rendered ineffective assistance in not making a record regarding the existence of pending charges of witness Stith, not requesting that the court conduct an in camera inspection of Rule 16(B)(1)(g) material before finishing cross examination of Kavar Thompson, and in not raising appellant's due process clause rights as well as a hearsay exception regarding the testimony of a confession of a third party, resulting in the denial of the right to a fair trial and the right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution as well as Article One, Section Ten of the Ohio Constitution.

{¶ 23} We review ineffectiveness of counsel in accordance with the Supreme Court's test in *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. See, e.g., *State v. Lewis* (July 21, 1998), Franklin App. No. 97APA09–1263, 1998 WL 418913; *State v. Carter* (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965.

{¶ 24} The *Strickland* test has two prongs: (1) appellant must demonstrate that counsel's failure was so serious that he or she ceased to serve as counsel under the Sixth Amendment, and (2) appellant must demonstrate that he was harmed by the error. See *State v. Farrah* (Apr. 18, 2002), Franklin App. No. 01AP–968, 2002 WL 576110. Any error, even if prejudicial, does not warrant reversal—counsel's error must have affected the outcome of the trial. See *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052; see also *Farrah* at *9–10 (Tyack, P.J., concurring).

{¶ 25} Appellate counsel for Swann asserts three failures of Swann's trial lawyer. First was the failure to proffer details of Stith's criminal charges into the record. Having previously found that no error existed with respect to the trial court disallowing cross-examination of Stith about these charges, we cannot see how providing any additional details would have affected the court's ruling on the verdict below.

{¶ 26} Second, trial counsel was ineffective on the basis that he failed to review a tape recording of Kavar Thompson's prison interview conducted by the assistant prosecutor and homicide detective. Ordinarily, Crim.R. 16(B)(1)(g) dictates that the interview tape should have been reviewed in camera with trial counsel prior to cross-examination. In this case, however, the trial judge reviewed the tape and found no significant discrepancies between Thompson's trial testimony and what the witness said in the taped interview. Again, counsel's failure to review the tape in strict accordance with Crim.R. 16 could not have affected the trial outcome, given the trial judge's determination that nothing in the tape could have been used for purposes of cross-examination.

{¶ 27} Third, trial counsel failed to develop fully theories on the trial judge's refusal to allow Carlisle's third-party-guilt statements. After reviewing the entire record, we find the discussion of these issues in the trial court to have been extensively developed. Indeed, Swann's first assignment of error alleges 25 pages of discussion on the issue. The Supreme Court of the United States has indicated that a number of legal theories are involved in allowing such statements to be presented (due process, compulsory process, and confrontation). See, e.g., *Holmes,* 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503. We have already sustained appellant's first assignment of error as to the exclusion of Carlisle's statements. Trial counsel for the defense cannot be said to have rendered ineffective assistance for failing to make the record even more detailed.

{¶ 28} The third assignment of error is overruled.

{¶ 29} Appellant's fourth assignment of error:

The trial court erred by not sentencing appellant to minimum and concurrent terms of imprisonment, therefore depriving appellant of due process of law as guaranteed by the Ohio and United States Constitution.

{¶ 30} In February 2006, the Supreme Court of Ohio announced its decision in *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at ¶ 96–102, which severed large portions of Ohio's felony sentencing statutes involving judicial fact-finding from the other sentencing statutes. Id., citing *Blakely v. Washington* (2004), 542 U.S. 296, 308–309, 124 S.Ct. 2531, 159 L.Ed.2d 403; *United States v. Booker* (2005), 543 U.S. 220, 234, 125 S.Ct. 738, 160 L.Ed.2d 621. Like *Blakely* and *Booker, Foster* eliminated judicial fact-finding from the felony sentencing procedure. *Foster* invalidated the statutory provisions allowing for increased prison terms based on judicially found facts, but because Ohio's pre-*Foster* sentencing guidelines favored minimum sentences within the given statutory range, the practical effect of *Foster,* by contrast to *Blakely* and *Booker,* tends to increase prison terms. See Sentencing Law & Policy, Who Wins from a *Booker* remedy? It Depends (Feb. 28, 2006), at http://sentencing.typepad.com/ sentencing law and policy/2006/week9/index.html ("Eliminating guideline mandates in the federal system gives judges more leeway to be lenient, but eliminating structured sentencing rules in Ohio gives judges more leeway to be harsh").

{¶ 31} In his fourth assignment of error, Swann argues that the severance remedy in *Foster* violated his constitutional rights because the severance in effect raised the statutory presumptive minimum sentence and because the alleged conduct for which he was convicted occurred while the pre-*Foster* sentencing guidelines were still intact; therefore, he should be sentenced in accordance therewith.

{¶ 32} In *State v. Gibson*, Franklin App. No. 06AP–509, 2006-Ohio-6899, 2006 WL 3775878 we found that the retroactive application of *Foster* did not violate appellant's right to due process of law or the ex post facto clause of the United States Constitution. Id. at ¶ 15. We determined that we were bound to follow *Foster* as written. See also *State v. Henderson*, Franklin App. No. 06AP–645, 2007-Ohio-382, 2007 WL 259246, at ¶ 7. Given that the Supreme Court invalidated portions of R.C. 2929.14 as unconstitutional under *Blakely*, the sentencing court must apply whatever portions of the statute remain in effect.

{¶ 33} We are similarly unpersuaded by appellant's argument that *Foster* violates the rule of lenity. See, e.g., *Chapman v. United States* (1991), 500 U.S. 453, 463–464, 111 S.Ct. 1919, 114 L.Ed.2d 524. The rule of lenity is a canon of statutory construction, which, by its definition, applies only where a given statute is vague or ambiguous. See id. If a statute is vague or ambiguous so that there could be two (or more) equally plausible meanings to the text, the rule of lenity provides that the ambiguity should be resolved in favor of the criminal defendant. We find nothing ambiguous in R.C. 2929.14. Therefore, we find appellant's reliance on the rule of lenity misplaced.

{¶ 34} In summary, we sustain appellant's first assignment of error. The second assignment of error is overruled in part and rendered moot in part. We overrule the third and fourth assignments of error. As a result, we vacate the judgment of the trial court and remand the case for further appropriate proceedings.

Judgment vacated
and cause remanded
for further proceedings.

BROWN, J., concurs separately.

SADLER, P.J., concurs in part and dissents in part.

BROWN, Judge, concurring separately.

{¶ 35} Because I agree with the ultimate conclusion in assignment of error one, but disagree with portions of the majority's decision, I respectfully concur separately. With regard to the first assignment of error, the sole issue is whether the testimony of four witnesses that a third party, Carlisle, confessed to shooting the victim should have been admitted as an exception to the hearsay rule under Evid.R. 804(B)(3). Specifically at issue is whether corroborating circumstances clearly indicate the trustworthiness of Carlisle's statement. Although I agree that there are useful similarities with *Holmes v. South Carolina* (2006), 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503, I disagree with the majority's analysis of *Holmes*. However, I do agree with the majority's ultimate conclusion that the

trial court erred when it denied appellant the opportunity to present the testimony of the four witnesses. After a review of the evidence, I would find that corroborating circumstances indicate the trustworthiness of the statement Carlisle made to the four witnesses. Therefore, I would sustain appellant's first assignment of error, albeit for different reasons than those relied upon by the majority.

{¶ 36} Further, because we must remand the matter for a new trial based upon our disposition of appellant's first assignment of error, I would decline to address the remaining assignments of error. Therefore, I would find appellant's second, third, and fourth assignments of error moot.

SADLER, Presiding Judge, concurring in part and dissenting in part.

{¶ 37} Being unable to agree with the majority's disposition of appellant's first assignment of error remanding this case for a new trial, I respectfully dissent.

{¶ 38} Initially, with respect to appellant's first assignment of error, I believe the lead opinion's focus on the decision rendered by the United States Supreme Court in *Holmes v. South Carolina* (2006), 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503, is misplaced. Although *Holmes* and this case involve a defendant attempting to introduce evidence that a third party confessed to the crime of which the defendant was accused, the similarities end there. In focusing on *Holmes,* the lead opinion appears to be suggesting that the requirement in Evid.R. 804(B)(3) that evidence of a third-party confession is not admissible "unless corroborating circumstances clearly indicate the trustworthiness of the statement" is itself a violation of appellant's right to present a complete defense, an issue appellant has not raised either at the trial court or on appeal.

{¶ 39} *Holmes* involved consideration of a South Carolina evidentiary rule that excluded evidence of a third-party confession where the trial court determined that the evidence of the defendant's guilt was so strong that the evidence of the third party's confession was not sufficient to raise a reasonable inference of the defendant's own innocence. The court recognized that some evidentiary rules may properly limit evidence regarding third-party guilt, stating:

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. An application of this principle is found in rules regulating the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which they are charged. Such rules are widely accepted and are not challenged here.

Id. at syllabus. The court recognized that evidence that another person committed the crime may be excluded "where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial." 547 U.S. 319, 126 S.Ct. at 1733, 164 L.Ed.2d 503, citing 40A American Jurisprudence 2d (1999) 136–138, Homicide, Section 286. The court found that South Carolina's rule violated this principle because it required the trial court to consider only the strength of the prosecution's case, rather than to engage in a separate evaluation of the evidence showing the third party's guilt. Id. 547 U.S. 319, 126 S.Ct. at 1734–1735, 164 L.Ed.2d 503.

{¶ 40} Since Evid.R. 804(B)(3) requires the trial court to engage in an analysis of the evidence indicating the third party's guilt, it is not a rule of the sort that suffers from the constitutional infirmity discussed in *Holmes*. Furthermore, it is clear that in this case, the issue is not whether the trial court properly *construed* Evid.R. 804(B)(3), which was the issue with the evidentiary rule in *Holmes*. The issue is whether the trial court properly *applied* the rule.

{¶ 41} Generally, the decision to admit or refuse to admit evidence of a third-party confession under Evid.R. 804(B)(3) is one reviewed under an abuse-of-discretion standard. *State v. Sumlin* (1994), 69 Ohio St.3d 105, 630 N.E.2d 681. Thus, as with the review of any evidentiary decision by a trial court, our review should be limited to whether the trial court acted unreasonably, arbitrarily, or unconscionably in deciding whether to exclude evidence of Carlisle's confessions. *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810.

{¶ 42} Courts have generally recognized three requirements when considering whether hearsay evidence regarding a third party's confession should be admitted under Evid.R. 804(B)(3): (1) the declarant must be unavailable; (2) the declarant's statement must be of a nature that would subject the declarant to criminal liability such that a reasonable person in the declarant's position would not have made the statement if the declarant did not believe it to be true; and (3) corroborating circumstances must clearly indicate the trustworthiness of the confession. *State v. Durant,* 159 Ohio App.3d 208, 2004-Ohio-6224, 823 N.E.2d 506. In this case, Carlisle was unavailable by virtue of his invocation of his Fifth Amendment right against self-incrimination, and his confessions, if believed, could have subjected him to criminal liability. Consequently, the only issue is whether there were corroborating circumstances clearly demonstrating the trustworthiness of Carlisle's confessions.

{¶ 43} Courts have stressed that the hurdle of showing corroborating circumstances is not an insignificant one. *State v. Landrum* (1990), 53 Ohio St.3d 107, 559 N.E.2d 710. The concern underlying the requirement for corroborating circumstances for Evid.R. 804(B)(3) purposes is that it allows an individual to

make statements exculpating another and then avoid cross-examination on the issue by claiming the privilege against self-incrimination. *State v. Mengistu,* Franklin App. No. 02AP–497, 2003-Ohio-1452, 2003 WL 1498501, citing *United States v. Mackey* (C.A.1, 1997), 117 F.3d 24.

{¶ 44} A number of courts have discussed the question of what facts demonstrate sufficient corroborating circumstances for the purposes of admitting evidence of a third-party confession. These courts have generally recognized that due process concerns require consideration not only of the circumstances surrounding the making of the statement, but of any other corroborating evidence as well. See *Sumlin; Durant,* citing *Chambers v. Mississippi* (1973), 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297.

{¶ 45} In this case, the corroborating circumstances do not clearly demonstrate the trustworthiness of Carlisle's confessions. Initially, I must disagree with the lead opinion's assertion that "Carlisle's purported confession was corroborated by at least four other nearby residents." Supra at ¶ 3. In its literal sense, this statement suggests that the proffered witnesses were corroborating the substance of Carlisle's confessions, i.e., that Carlisle was the shooter. In actuality, the statements only serve to corroborate that Carlisle made the confession.

{¶ 46} Further, the circumstances surrounding Carlisle's purported confession do not indicate a degree of trustworthiness such that the trial court abused its discretion by declining to admit them under Evid.R. 804(B)(3). One of the witnesses who proffered testimony regarding Carlisle's confessions was Tia Holland, appellant's girlfriend and the mother of his child. The other three proffered witnesses were Lisa Hughes and her daughters, Ciera and Tiffany. Lisa Hughes is Holland's cousin. All of the proffered testimony showed that Carlisle was extremely close with appellant; in fact, the testimony was that appellant was a father figure to Carlisle. The closeness of the relationship between appellant and the witnesses to Carlisle's confession is a factor that undermines the trustworthiness of Carlisle's confession. See *Sumlin,* 69 Ohio St.3d 105, 630 N.E.2d 681. The trustworthiness of Carlisle's purported confession is further undermined by the closeness between appellant and Carlisle. *Mengistu.*

{¶ 47} Furthermore, there is no evidence in the record that would support a conclusion that Carlisle was the shooter. The lead opinion relies to some extent on what it apparently deems to be weak testimony identifying appellant as the shooter, stating that "[i]t was dark when the shooting occurred, and Stith made his identification of Swann based solely on his recollection of Swann's voice." Supra at ¶ 8. This conclusion is contradicted by other testimony from John Stith, who testified:

I looked straight up and I seen Mr. Christopher Swann, I could not exactly see what he was holding in his hand. But I seen the fire come from him. He told me fuck me and shot me in my neck.

Thus, the identification of appellant as the shooter was not based solely on Stith's recognition of appellant's voice.

{¶ 48} The defense attempted to enter as evidence summaries prepared by Columbus Police Department detectives of statements made after the shooting by Stith and Kavar Thompson in which each allegedly stated that Carlisle had been seen with appellant and Andre Sharp shooting guns into the air, which was the cause of the confrontation that resulted in Stith being shot. However, these summaries were not entered into evidence. In their trial testimony, both Stith and Thompson denied having seen Carlisle at the scene either before or during the shooting and denied telling the police that he was present. Detective John Weis, who had prepared the summary of Thompson's statement, testified that Thompson had not said Carlisle was at the scene and that the reference to Carlisle in the summary of Thompson's statement was an error.

{¶ 49} Given these facts, I cannot agree with the conclusion that the trial court abused its discretion in the manner that it applied Evid.R. 804(B)(3). Thus, I would overrule appellant's first assignment of error.

{¶ 50} Since I would overrule appellant's first assignment of error, I would proceed to consider appellant's remaining assignments of error. The lead opinion does, in fact, consider each of the remaining assignments of error, overruling appellant's third and fourth assignments on their merits, overruling appellant's second assignment on the merits as it relates to the trial court's decision not to admit evidence regarding pending criminal charges against John Stith, and finding the second assignment moot as it relates to the trial court's decision not to admit evidence regarding Kavar Thompson's pending motion for judicial release (although still including an extensive discussion of the assignment as it relates to Thompson's motion).

{¶ 51} To the extent that the lead opinion does address the merits of appellant's remaining three assignments of error, I concur, in judgment only, with the decision to overrule appellant's third and fourth assignments of error on their merits, and with the decision to overrule appellant's second assignment of error on its merits as it relates to Stith's pending criminal charge. I would also find that the trial court's failure to admit evidence regarding Thompson's pending motion for judicial release was harmless error and would therefore affirm the judgment of the trial court.