{¶ 65} I dissent from the majority opinion for two reasons: (1) Montie should have been able to test the bias of the primary complaining witness and (2) the trial court erroneously concluded that the child's statement to the social worker was not a statement about which she could be cross-examined.
 {¶ 66} The complaining witness testified at the trial of this matter in 2006 as to what happened sometime in 2001. She was 14 years old when she testified at trial and nine years old in 2001 when the incident happened. The memory and veracity of this child was the lynchpin upon which guilt or innocence rested.
 {¶ 67} The testing of the credibility of child witnesses is always difficult. The task is made all the more difficult when the child tells her story to family members in 2001, to Children Services in 2004, and to a jury in 2006. The potential for unreliability in such a scenario is profound. *Page 14 
 {¶ 68} Sometime in 2004, this child told a caseworker by the name of Sherri Eckman that she believed Montie "had drugs in the house, and she smelled at [sic] it, and she yelled at him for smoking the pot." The child then went on to inform the Children Services' worker that at one point in this strained relationship she "went downstairs with a knife and threatened to cut [Montie] open." Thus, this child is the very definition of a biased and hostile witness.
 {¶ 69} At issue in this matter is the right to confront one's accuser.
 {¶ 70} The trial court refused to permit counsel for Montie to effectively cross-examine the child. Counsel wished to inquire, for example, why she informed her case worker that she wanted to cut Montie open. Could it be that this nine-year-old child was tired of the family's unexplained house guest? Or is it possible that other issues in this household were creating animosity and bias in the child toward all adults? Furthermore, how does one explain the two-year silence between the time the child informed the parents about the alleged rape and the report to the authorities unless one is allowed to inquire of the child? It is clear to this writer that one charged with rape has the right to cross-examine witnesses testifying against him to test their bias.[1]
 {¶ 71} As stated by the Supreme Court of Ohio:
 {¶ 72} "The Confrontation Clauses were written into our Constitutions `to secure for the opponent the opportunity of cross-examination. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed *Page 15 
upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.'"[2]
 {¶ 73} What is missing here is the opportunity to question the bias of this young witness in a very unconventional setting. Montie was a long-term visitor in her home when he allegedly committed the crime. It was reported to an adult some months later and to the authorities several years later. It is critical that the jury have a framework within which to judge the bias of the witness that may have evolved over those years.
 {¶ 74} In addressing the importance of cross-examination to demonstrate bias, the Second Appellate District has held:
 {¶ 75} "We also reject the state's argument that the absence of evidence demonstrating that Riley actually had criminal charges pending against him in Montgomery County is fatal to Durant's claim. Evid. R. 616(A) provides that `any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence.' By sustaining the state's objection to defense counsel's question, the trial court precluded an inquiry of the witness and, in so doing, deprived Durant of a substantial right by requiring foundational proof through extrinsic evidence. `Counsel often cannot know in advance what pertinent facts may be elicited on cross-examination. For that reason it is necessarily exploratory * * *. Prejudice ensues from adenial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test without which the jury cannot fairly appraise them. To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts tending to *Page 16 
discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial.'"[3]
 {¶ 76} In this court, the question is not whether any particular witness is to be believed. Instead, the question is whether the trier of fact was permitted to hear everything necessary to assess whether that particular witness is to be believed. In this case, the jury needed to know that the primary complaining witness harbored the intent to cut Montie open with a knife. Was it based on the charged conduct? Or teenage outrage at slights, whether real and imagined? One can only speculate. However, once the speculation begins, the review concludes.
 {¶ 77} The matter should be reversed so that the jury can hear all relevant evidence, including the potential bias of the primary complaining witness.
 {¶ 78} The second part of my dissent concerns the trial court's ruling that the statement of the child to the social worker when the child was 12 years old was not a statement about which she could be impeached. As this court stated in State v. Scheidel, "[n]ine-year-olds are not in the business of reviewing, adopting, or approving witness statements."[4]
I believe this reasoning applies equally to the 12-year-old witness in this case.
 {¶ 79} The witness in the Scheidel case had not reviewed, approved, or signed her statement to the deputy sheriff. Nevertheless, in that case, this court stated:
 {¶ 80} "Nothing in the record indicates whether Deputy Lazanis asked M.M. for her approval of her statement following the interview, but, in the absence of a separate *Page 17 
adjudication in probate court to determine her ability to approve such a statement, we can only speculate as to whether she would have approved her statement to the deputy. If the existence of her statement had been disclosed prior to trial, it would have been a simple matter for the trial court to conduct an in camera interview of M.M. to determine whether she made such a statement and whether she approved it. Had such an in camera interview taken place and had M.M. approved her statement before the trial court, then counsel for Scheidel would have been able to impeach her with regard to her prior inconsistent statement."[5]
 {¶ 81} Likewise, in this case, there is nothing in the record to indicate that the child's statement to the social worker had been approved by her. As in the Scheidel case, it would have been a simple matter for the trial court to determine in camera whether the child approved the statement and, if so, it could then serve as a prior inconsistent statement about which she could have been impeached. As it was, the ruling of the trial court to prohibit examination of the witness concerning her statement to the social worker further deprived Montie of a fair trial.
[1] See Evid. R. 613(A).
[2] (Emphasis in original and other citations omitted.) State v.Self (1990), 56 Ohio St.3d 73, 76-77, quoting 5 Wigmore on Evidence (Chadbourn Rev. 1974) 150, Section 1935.
[3] (Emphasis in original) State v. Durant, 159 Ohio App.3d 208,2004-Ohio-6224, at ¶ 34, quoting Alford v. United States (1931),282 U.S. 687, 692.
[4] State v. Scheidel, 165 Ohio App.3d 131, 2006-Ohio-195, at ¶ 15.
[5] Id. *Page 1